*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

DAIMLERCHRYSLER CORPORATION and
DAIMLERCHRYSLER-UAW PENSION AGREEMENT,

*Plaintiffs-Appellees,*

*v.*

No. 05-1716

MIKE COX, Attorney General of the State of
Michigan, and JAY B. RISING, Treasurer of the State
of Michigan,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 04-73291—Bernard A. Friedman, Chief District Judge.

Argued: April 27, 2006

Decided and Filed: May 23, 2006

Before: SUHRHEINRICH, GILMAN, and ROGERS, Circuit Judges.

—————————————

### COUNSEL

—————————————

**ARGUED:** Victoria A. Reardon, STATE OF MICHIGAN, DEPARTMENT OF THE ATTORNEY GENERAL, Detroit, Michigan, for Appellants. Edward C. Hammond, CLARK HILL, Birmingham, Michigan, for Appellees. **ON BRIEF:** Victoria A. Reardon, Daniel M. Levy, STATE OF MICHIGAN, DEPARTMENT OF THE ATTORNEY GENERAL, Detroit, Michigan, for Appellants. Edward C. Hammond, Florence M. Vincent, CLARK HILL, Birmingham, Michigan, Stephanie J. Clifford, CLARK HILL, Detroit, Michigan, for Appellees.

—————————————

### OPINION

—————————————

RONALD LEE GILMAN, Circuit Judge. This is a case of first impression in this circuit, involving the question of whether Michigan's State Correctional Facility Reimbursement Act (SCFRA), in conjunction with other Michigan laws and with directives from the Michigan Department of Corrections (MDOC), runs afoul of the federal Employee Retirement Income Security Act (ERISA) in cases where prisoners refuse to inform their pension plans of a change of address. The combined effect of the Michigan laws requires wardens to notify pension plans that they should send the prisoner's benefit payments to the institutional address of that prisoner. When

a pension payment is received at the prison, it is deposited into the prisoner's institutional account. SCFRA then allows the warden to garnish up to 90% of each deposit to reimburse the state of Michigan for the costs of caring for the prisoner.

In this case, the DaimlerChrysler Corporation, as the fiduciary of its pension plan, brought a declaratory action to void state-court orders and notices, issued pursuant to SCFRA, that informed DaimlerChrysler that it should send benefit payments to the prisoners' institutional addresses. The district court invalidated the orders and notices as violations of ERISA's anti-alienation provision, but only to the extent that DaimlerChrysler is required to "send or make payments of Pension Plan benefits to any address or account other than as designated by the Participants of the Pension Plan, under Pension Plan terms." For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A.        Michigan's reimbursement laws

In Michigan, inmates are permitted to receive mail only at the correctional facility where they are incarcerated. A directive issued by the MDOC also prohibits prisoners from possessing accounts at financial institutions, so prisoners must keep all of their assets in their institutional accounts. Dept. of Corrections Policy Directive No. 04.02.105. Funds credited to a prisoner's account may be used only in accordance with this directive. *Id.*

Michigan enacted SCFRA to reimburse the state for the costs of detaining and providing for its prisoners. Under SCFRA, the attorney general may seek reimbursement for expenses incurred during a prisoner's incarceration by filing a complaint against the prisoner in the state trial court. Mich. Comp. Laws § 800.404(1). The court, after considering any legal or moral obligations of the prisoner to support any dependents, may order the prisoner to reimburse the state for the costs of incarceration in an amount up to 90% of the prisoner's assets. Mich. Comp. Laws § 800.403(3). A prisoner's assets include his pension benefits. Mich. Comp. Laws § 800.401a(a).

SCFRA also provides mechanisms for ensuring that a prisoner's assets are used to reimburse the state. Pursuant to § 800.404(3) of the Michigan Compiled Laws, the state court may order any person, corporation, or entity having custody of a prisoner's assets to "appropriate and apply the assets or a portion thereof toward reimbursing the state." But this specific provision of SCFRA is not applicable where, as in the present case, a prisoner's assets are held by a private pension plan. Application of § 800.404(3) in those cases would violate ERISA's anti-alienation provision, which states that each plan must "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). Instead, in order to recover a prisoner's benefits held by a private pension plan, the state utilizes SCFRA in conjunction with other Michigan laws and with MDOC's prison directives. This combination of laws and directives is at issue in the present case.

Under SCFRA, the attorney general first pursues a judgment against the prisoner and is awarded a percentage of the prisoner's pension payments. *See* Mich. Comp. Laws §§ 800.403(3), 800.404. The court then orders the prisoner to inform his or her pension plan that any benefit payments should be sent to the institutional address. If the prisoner refuses to comply, the warden of the prisoner's institution must send a copy of the order to the pension plan. The order serves to notify the pension plan of the prisoner's institutional address. Once payments are received at the prison, they are automatically deposited into the prisoner's institutional account.

**B.      Orders and notices at issue**

In the present case, four Michigan prisoners—Gerald Cotter, Alvin Jenkins, Jessy Matthews, and Harold Swanson—are receiving benefit payments from the DaimlerChrysler Corporation-UAW Pension Agreement (Pension Plan).  After Jay B. Rising, the state treasurer, filed actions against the prisoners for reimbursement pursuant to SCFRA, the prisoners were each ordered by the court to notify DaimlerChrysler that their pension benefit payments should be mailed to them at their new institutional address.  Each order then stated, in slightly modified form, the following:

> If the Defendant [prisoner] shall fail or refuse to notify DaimlerChrysler Corporation of his current legal prison address, or . . . any future prison address, the warden or his representative of the correctional facility where [the prisoner] is confined shall serve a copy of this Order, along with certification of the address of the correctional facility . . . upon the DaimlerChrysler Corporation, and this shall serve as notification to DaimlerChrysler Corporation of [the prisoner's] legal address where [the prisoner] is to receive his pension benefits.

The orders then require the warden to make monthly distributions to the state of Michigan in the amount of 90% of any monies deposited into the prisoner's account.

Three of the prisoners—Jenkins, Matthews, and Swanson—did not comply with the court orders requiring them to inform DaimlerChrysler to send their benefit payments to their prison addresses.  The fourth prisoner, Cotter, was the only DaimlerChrysler beneficiary who gave DaimlerChrysler this requisite notification.  Mike Cox, the Michigan Attorney General, therefore sent DaimlerChrysler three notices pursuant to the respective court orders for the three noncomplying prisoners, informing DaimlerChrysler where "future benefit checks should be mailed."  The "Warden's Notice of Alvin Jenkins's Legal Address Pursuant to Final Court Order of May 28, 2004," for example, reads as follows:

> Alvin Jenkins has refused to sign the certification of his legal address as required by the [attached] Court's order.
>
> Therefore, according to the Order, I am notifying you that Alvin Jenkins's legal address is:
>
> Alvin Jenkins, #440746
> Parnall Correctional Facility
> 1780 E. Parnall
> Jackson, MI 48201
>
> Please make his monthly pension benefit checks payable to Alvin Jenkins and mail them to him at his above legal address.  If Alvin Jenkins moves to another prison facility, I will notify you of his new address for purposes of receiving his pension benefit checks according to the Court Order.

The three notices were signed by the warden of each prisoner's correctional institution.

DaimlerChrysler did not comply with the three notices received from the Michigan Attorney General, but instead followed the plan's terms and specifications for sending payments to the prisoners according to the mailing address each prisoner had given DaimlerChrysler in accordance with plan documents.  It did, however, change Cotter's address pursuant to his direct request.

**C.      Proceedings below**

In September of 2004, DaimlerChrysler brought a declaratory action against Attorney General Cox and State Treasurer Rising, seeking a determination that (1) state officials are precluded from enforcing the orders against the prisoners to the extent that they contravene ERISA or the Pension Plan, and (2) the orders, requests for reimbursement, and the notices issued pursuant to SCFRA are void to the extent that they compel the prisoner, or require the warden, to direct DaimlerChrysler to make payments to an account that is not voluntarily designated by the prisoner.

DaimlerChrysler argued that SCFRA is preempted by ERISA because SCFRA conflicts with several provisions in the Pension Plan. First, as mandated by ERISA, the Pension Plan provides that "[a]ny attempt to alienate, sell, transfer, assign, pledge, or otherwise encumber [benefits payable under the Pension Plan], whether presently or thereafter payable, shall be void." Pension Plan § 14. The Pension Plan further states that benefits cannot "devolve upon anyone else." *Id.* DaimlerChrysler also pointed to language from the Pension Plan and the Summary Plan Description (SPD) regarding address changes. In particular, the SPD provides that if a participant's address changes, he "should notify Benefit Express at 1-800-409-3300 . . . ." A confidential PIN is also required to access DaimlerChrysler's Benefit Express phone system.

The state officials then filed for summary judgment, arguing that the orders and notices issued pursuant to SCFRA violate neither ERISA's anti-alienation provision nor the corresponding anti-alienation language in the Pension Plan. They further argued that SCFRA, and its methods of securing a prisoner's change of address, impose only an incidental burden on the Pension Plan and is therefore not preempted by ERISA's general preemption provision.

After a hearing in May of 2005, the district court granted DaimlerChrysler's request for declaratory relief. The court held that the orders notifying DaimlerChrysler of the change in address, and the notices themselves, are preempted by ERISA's anti-alienation provision based on an earlier district court decision in *Roberts v. Baugh*, 986 F. Supp. 1074 (E.D. Mich. 1997). Because the court found that these orders and notices did not "burden" the Pension Plan, however, the court declined to hold that they were also preempted by ERISA's *general* preemption provision.

Although DaimlerChrysler originally sought to void all of the orders, including the order requiring Cotter to inform DaimlerChrysler of his address change, it limited its position after the district court's judgment. DaimlerChrysler now claims that the orders and notices are void only to the extent that they require the warden to inform DaimlerChrysler that it should change the addresses of the three noncomplying prisoners. The district court therefore entered an amended declaratory judgment, pursuant to a stipulation by DaimlerChrysler, holding that the orders, notices, and state treasurer's requests for reimbursement under SCFRA are preempted by ERISA, but only to the extent that DaimlerChrysler is directed to "send or make payments of Pension Plan benefits to any address or account other than as designated by the Participants of the Pension Plan, under Pension Plan terms." Any future actions by the state of Michigan for reimbursement under SCFRA were also invalidated to the extent that they directed DaimlerChrysler to send payments to an account not personally designated by a plan beneficiary in the Pension Plan. The state officials timely appealed the amended declaratory judgment that invalidated the warden's notices to Jenkins, Matthews, and Swanson.

## II. ANALYSIS

### A.    Standard of review

This court reviews de novo the district court's decision to grant a motion for declaratory judgment. *Kelley v. E.I. DuPont de Nemours & Co.*, 17 F.3d 836, 844 (6th Cir. 1994). Whether ERISA preempts a state law is a question of law and is therefore also reviewed de novo. *Ramsey v. Formica Corp.*, 398 F.3d 421, 424 (6th Cir. 2005).

### B.    ERISA's preemption framework

ERISA, 29 U.S.C. §§ 1001-1461, is a "comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). The statute does not require employers to provide any particular benefits to their employees, but sets forth uniform, federal standards that control their administration. *Id.* at 91. The Supreme Court has frequently reviewed cases involving ERISA's preemption of state laws due to the "comprehensive nature" of ERISA, "the centrality of pension and welfare plans in the national economy, and their importance to the financial security of the Nation's work force." *Boggs v. Boggs*, 520 U.S. 833, 839 (1997).

In the present case, DaimlerChrysler argues that SCFRA is preempted by ERISA in two distinct ways. First, ERISA contains an anti-alienation provision that requires each pension plan to "provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C. § 1056(d)(1). The Pension Plan, pursuant to this provision, prohibits any alienation, transfer, sale, or other encumbrance of plan benefits. Pension Plan § 14. If SCFRA effectuates an assignment or alienation in violation of 29 U.S.C. § 1056(d)(1), then ERISA preempts its application. *See Branco v. UFCW-N. Cal. Employers Joint Pension Plan*, 279 F.3d 1154, 1160 (9th Cir. 2002) (holding that the language of the court order that was before it "conflicts with ERISA's anti-alienation provision and is therefore pre-empted"). The other ERISA provision relied on by DaimlerChrysler is found at 29 U.S.C. § 1144(a), which invalidates "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan."

### C.    The parties' prior litigation

Before reaching either of its preemption arguments, however, DaimlerChrysler contends that prior litigation between the parties in the case of *Roberts v. Baugh*, 986 F. Supp. 1074 (E.D. Mich 1997), controls the outcome here based on the doctrines of res judicata, collateral estoppel, and stare decisis. The doctrines of res judicata and collateral estoppel prevent parties from relitigating issues that they had a full and fair opportunity to litigate in another forum. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 467 (1982) (barring a plaintiff's claims under Title VII in federal court because the state-court proceedings had provided a full and fair opportunity to litigate those claims). DaimlerChrysler argues that after the *Baugh* decision, which involved the "same parties" and the "same issues present in this case," DaimlerChrysler "should not have been forced to seek relief in this action or any other action where the [state officials] seek to circumvent *Baugh's* holding." (Appellee's Br. at 18-19) (emphasis omitted).

We respectfully disagree. The district court in *Baugh* confronted different provisions of SCFRA that allow the state to appoint the Pension Plan as a receiver to control the prisoner's assets and ultimately transfer them to the state. 986 F. Supp. at 1075. In provisions that are inapplicable to the present case, SCFRA gives the state the power to appoint a receiver "to protect and maintain assets pending resolution of an action" under SCFRA. Mich. Comp. Laws § 800.404a(2). As a further distinction between *Baugh* and the present case, the state officials in *Baugh* sought an order directly compelling DaimlerChrysler to send a prisoner's pension benefits to his institutional account

pursuant to provisions of SFCRA that the state now concedes are preempted by ERISA in cases involving private pension plans. 986 F. Supp. at 1076.

The present case, in contrast, concerns provisions of SCFRA that order the warden to notify a pension plan of a prisoner's new address. DaimlerChrysler is therefore not being directly compelled by a state-court order to change participants' addresses, but instead is being informed by the wardens that it should do so. Because *Baugh* concerned provisions of SCFRA inapplicable to the present case, the state did not—and was not required to—litigate the issues involved in the present case. We therefore hold that the doctrines of res judicata and collateral estoppel do not bar the state from opposing DaimlerChrysler's declaratory action. Although the district court in this case adopted, in large part, the reasoning of *Baugh*, it understood that it was in not bound by that decision.

DaimlerChrysler also argues that the doctrine of stare decisis required the district court to follow *Baugh*. This contention is without merit for the same reasons stated above.

## D.       ERISA's anti-alienation provision

DaimlerChrysler's next argument, and the one that ultimately persuaded the district court, is that the orders and notices requiring the warden to direct DaimlerChrysler to send benefit payments to a prisoner's institutional address violates ERISA's anti-alienation provision. The SCFRA scheme, DaimlerChrysler asserts, accomplishes an involuntary transfer of benefits into the hands of a state representative without the permission of the plan participant, in contravention of both ERISA's anti-alienation provision and DaimlerChrysler's corresponding Pension Plan terms.

ERISA's anti-alienation provision reflects a policy choice on the part of Congress "to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." *Patterson v. Shumate*, 504 U.S. 753, 765 (1992) (citations and quotation marks omitted). To that end, the anti-alienation provision requires that every pension plan include a prohibition on assigning or alienating benefits provided under the plan. 29 U.S.C. § 1056(d)(1). The Treasury Regulations, which interpret this provision and are entitled to deference under *Chevron U.S.A., Inc. v. National Resources Defense Council*, 467 U.S. 837 (1984), define the terms "assignment" and "alienation" as including

> any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.

26 C.F.R. 1.401(a)-13(c)(1).

In interpreting ERISA's anti-alienation provision and its corresponding regulations, the courts have "vigorously . . . enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar." *Patterson*, 504 U.S. at 760. Federal courts have thus barred state-court decisions and state laws that result in an assignment of a participant's right to his or her benefits. *See, e.g., id.* (holding that a bankruptcy trustee is prohibited from including a debtor's interest in his employee-benefits plan as a bankruptcy-estate asset); *Guidry v. Sheet Metal Workers Nat'l Pension Fund* (*Guidry I*), 493 U.S. 365 (1990) (holding that the imposition of a constructive trust on an embezzler's pension plan, based on the conclusion that he forfeited his right to benefits, violates ERISA's anti-alienation provision); *Gen. Motors Corp. v. Buha*, 623 F.2d 455, 460 (6th Cir. 1980) (holding that "federal cases have construed ERISA's provision against assignment or alienation as prohibiting garnishments generally").

Following these precedents, other district courts that have confronted provisions of SCFRA have held that the Act violates ERISA's anti-alienation principle. The district court in *Walters v. Cox*, 342 F. Supp. 2d 670 (E.D. Mich. 2004), for example, held that, although the *Rooker-Felman* doctrine barred the court from granting a prisoner relief, the "SCFRA provision allowing the state to redirect [the] prisoner's pension checks to [his] prison account violated ERISA's anti-alienation provision." *Id.* at 675 (citing *Baugh*, 968 F. Supp. 1074). *Walters* therefore invalidated court orders and notices similar to the ones at issue in this case. 342 F. Supp. 2d at 674. In addition, the district court in *Baugh* and the district court below invalidated the application of SCFRA to the ERISA plans before those courts.

The defendants take issue with these district court decisions. They believe that the present case is distinguishable from the classic cases of garnishment because in the present case (1) the state is not acquiring an interest in the payments until after they have been disbursed to the prisoners, and (2) the SFCRA orders and notices do not give the state officials an interest that is "enforceable against the plan." *See* 26 C.F.R. 1.401(a)-13(c)(1). These two arguments raise the same issue—namely, whether the warden's notice to the Pension Plan to redirect benefit payments to a prisoner's institutional account encumbers the benefit payments before they have left plan control.

This circuit, along with a majority of the other circuits, has held that once benefit payments have been disbursed to a beneficiary, creditors may encumber the proceeds. *See Cent. States, S.E. & S.W. Areas Pension Fund v. Howell*, 227 F.3d 672, 679 (6th Cir. 2000). In *Central States*, this court allowed a constructive trust to be imposed upon benefit payments "once the benefits ha[d] been released to the properly designated beneficiary." *Id.* As the Second Circuit has explained, the "requirement that pension plans contain a provision against assignment or alienation of benefits does not read comfortably as a prohibition against creditors reaching pension benefits once they have left the hands of the administrator." *Robbins v. DeBuono*, 218 F.3d 197, 203 (2d Cir. 2000) (holding that the Monroe County Department of Social Services did not violate ERISA's anti-alienation provision when it included as part of the wife's income the benefit payments already received by her husband).

The legislative history of ERISA's anti-alienation provision obligates a plan to protect benefits from alienation "at least up to the point of payment." *Guidry v. Sheet Metal Workers Nat'l Pension Fund* (*Guidry II*), 39 F.3d 1078, 1082 (10th Cir. 1994) (en banc) (holding that, once paid, pension benefits in a beneficiary's bank account are subject to garnishment). Circuit precedent thus stands for the proposition that once a pension plan has sent benefit payments to a beneficiary and relinquished control of those payments, the attachment of those funds by a creditor does not constitute an alienation.

In the present case, however, the SCFRA notices operate on plan benefits *before* they are sent. This case is therefore distinguishable from *Central States* because the notices, if enforceable against the Pension Plan, divert funds of the prisoners against their wishes before they are paid to the prisoners. Although the warden cannot actually access the money until after it has been disbursed into the prisoner's institutional account, the state officials procure a judgment entitling the state to 90% of the money—and the warden takes action to inform the Pension Plan where to place the money—while the plan still has control of the funds. This is not a case, therefore, where a plan is no longer obligated to protect pension payments from alienation because the benefits have already been disbursed at the direction of the beneficiary.

What if the warden, who had already been granted an interest through SCFRA in 90% of a prisoner's pension benefits, had informed the Pension Plan that it should deposit the money directly into the warden's account instead of the prisoner's account? If "enforceable against the plan," this would certainly be an alienation of the prisoner's benefits. Yet the present case differs only to the extent that the accounts at issue are labeled with the prisoner's name. Even in cases where the courts have required a debtor to place all of his benefits into a specified account for garnishment by a third

party, the beneficiary still received the payments at his specified address and then turned them over to the creditor. In other words, the encumbrance was placed on the funds only after the point where the pension plan involved no longer had control of the funds. *See Hoult v. Hoult*, 373 F.3d 47, 49-51 (1st Cir. 2004) (holding that "the anti-alienation provision does not apply where, as here, the funds have already been disbursed to the plan beneficiary").

The state officials argue, however, that the SFCRA notices and orders do not constitute an alienation of benefits because the court orders direct the *warden* to send a notice to the Pension Plan. These notices, the officials argue, are therefore not "enforceable against the plan," as required by 26 C.F.R. 1.401(a)-13(c)(1), because they do not directly obligate DaimlerChrysler to do anything. The notices, the officials contend, instead direct the warden to notify DaimlerChrysler that it should send benefits to a prisoner's institutional address. But DaimlerChrysler's declaratory action seeks a ruling on the Pension Plan's legal obligations with regard to the SFCRA notices. DaimlerChrysler has brought suit, as the fiduciary responsible for the administration of its Pension Plan, in order to resolve the issue of whether it must follow the SCFRA orders before the state tries to enforce them.

If we were to hold that DaimlerChrysler must comply with the SCFRA notices, we would be creating a legal obligation enforceable against the Pension Plan. The state's interest in 90% of the pension benefits would then be enforced through notices instructing the Pension Plan to send the prisoner's benefit payments to an account controlled by the warden, which would constitute an alienation of plan assets. We therefore affirm the district court's holding that the SCFRA orders and notices are void to the extent that they direct DaimlerChrysler to send benefits to an address not designated by a beneficiary. The state may still send the notices, but DaimlerChrysler is not obligated to comply with them.

We acknowledge that the Michigan Supreme Court addressed notices and orders under SCFRA that were similar to the notices and orders at issue here in *State Treasurer v. Abbott*, 660 N.W.2d 714, 719 (Mich. 2003), and that the Michigan Supreme Court reached the opposite conclusion. The Court held that because money had not been transferred from the pension plan at issue to "another person" instead of to the prisoner, no alienation had occurred. Because the prisoners had received their benefit payments at their own institutional addresses, and because these benefits were not attached until they were paid to the prisoners, the Michigan Supreme Court held that there was no alienation. *Id.*

We find the *Abbott* opinion unpersuasive. Contrary to the reasoning of the Michigan Supreme Court, the fact that the prisoners have received their benefit payments at their "own" addresses is irrelevant to the question of alienation because (1) the prisoners did not want to receive the payments at their institutional addresses, (2) Michigan law strictly controls a prisoner's bank account and how the funds may be used, and (3) the state already effectively owned 90% of the payments even before they were received. The fact that the payments were sent to the prisoner's institutional address is therefore a mere formalism that is not dispositive of whether an alienation has occurred in the present case.

Although we hold that SCFRA as applied in this case is preempted by ERISA, we are not rendering the state incapable of seeking reimbursement using a prisoner's pension benefits. Once the benefit payments are received, even if the prisoner tries to conceal them in an illegal account, the state can take action against the prisoner by placing a constructive trust on those already-paid funds. *See Guidry II*, 39 F.3d at 1082-83. The state must, however, wait for the Pension Plan to send the benefit payments at the direction of the prisoner before the state encumbers those payments. To do otherwise would violate both the letter and the spirit of ERISA's anti-alienation provision (which, at a minimum, prohibits the attachment of a debtor's pension plan benefits while still controlled by the pension plan) and the terms of the Pension Plan forbidding the benefits from devolving upon

others. We are not passing, however, on the question of whether state officials can compel prisoners to send their address changes to the Pension Plan because that issue is not before us.

**E.     ERISA's general preemption provision**

Because we hold that SCFRA orders and notices are preempted by ERISA's anti-alienation provision, we need not address whether the orders and notices are also preempted by ERISA's general preemption provision. That question can wait for another day when it may prove dispositive in a case then before the court.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.