SELFLUBE, INC v JJMT, INC

Docket No. 261743. Submitted November 8, 2006, at Grand Rapids. Decided March 25, 2008, at 9:05 a.m. Leave to appeal sought.

Selflube, Inc., brought an action in the Kent Circuit Court against JJMT, Inc., James A. DeHaan, and others, seeking damages for losses suffered as a result of an embezzlement scheme allegedly organized by DeHaan. Other cross-claims and counterclaims involving the named parties followed. H.S. Die & Engineering, Inc., DeHaan's employer, filed a fourth-party complaint against De-Haan and JJMT, alleging common-law counts of fraud, civil conspiracy, tortious interference with advantageous business relationships or expectancies, and statutory conversion. The court, Donald A. Johnston, J., entered a temporary restraining order when DeHaan applied for a distribution from his 401(k) retirement plan administered by H.S. Die. The order placed certain restrictions on DeHaan's access to and control of the pension funds. DeHaan failed to defend against H.S. Die's complaint, and a default judgment was entered against JJMT and DeHaan. However, before the default was entered, DeHaan challenged the preliminary injunction and moved to set it aside, arguing that H.S. Die had no legal right to an injunction against his 401(k) account because the funds are regulated by the federal Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*, and are protected by the act's antialienation provision, 29 USC 1056(d)(1), even when the plan participant has committed malfeasance. The court entered an order granting H.S. Die a permanent injunction. DeHaan and JJMT appealed by leave granted from the permanent injunction.

The Court of Appeals *held*:

1. The circuit court had jurisdiction over the claims of H.S. Die, which were based on state law. Those claims were not brought under ERISA and, therefore, were not subject to the exclusive jurisdiction of the federal circuit courts regarding actions brought under ERISA. DeHaan's argument that H.S. Die lacks standing is without merit for the same reason.

2. The protection of ERISA's antialienation provision extends to involuntary alienation and is applicable even when the partici-

pant has engaged in criminal or civil misconduct. However, the provision does not apply to pension funds after the funds are received by the beneficiary.

3. Certain provisions of the injunction are impermissible under ERISA. To the extent that the injunction conflicts with ERISA, it is preempted by ERISA. The injunction cannot impose conditions on DeHaan's exercise of his rights under the plan or require him to direct the plan administrator to transfer any direct-rollover IRA distributions to a financial institution and account selected by H.S. Die. The circuit court cannot take control of the funds the moment they leave the plan, and while they are en route to an IRA.

4. The circuit court did not address the issue whether H.S. Die could reach the funds after they are in an IRA. Therefore, the injunction must be vacated and the matter must be remanded to allow the circuit court to address the issue.

Injunction vacated and case remanded for further proceedings.

1. PENSIONS — EMPLOYEE RETIREMENT INCOME SECURITY ACT — MISCONDUCT OF PARTICIPANTS.

    The protection of the Employee Retirement Income Security Act's antialienation provision extends to involuntary alienation and is applicable even where the participant has engaged in criminal or civil misconduct (29 USC 1056[d][1]).

2. PENSIONS — EMPLOYEE RETIREMENT INCOME SECURITY ACT — ANTIALIENATION PROVISION — INDIVIDUAL RETIREMENT ACCOUNTS.

    The antialienation provision of the Employee Retirement Income Security Act does not apply to pension funds after the funds are received by the beneficiary; Individual Retirement Accounts (IRAs) are not subject to the act and are specifically exempted from the act's antialienation requirement; once funds are in an IRA, they are no longer protected by the act (29 USC 1056[d][1]).

*Miller Johnson* (by *William H. Fallon* and *Michael E. Stroster*) for H.S. Die & Engineering, Inc.

*Mika Meyers Beckett & Jones PLC* (by *Neil P. Jansen*) for James A. DeHaan.

Before: O'CONNELL, P.J., and WHITE and MARKEY, JJ.

PER CURIAM. Fourth-party-defendants James A. De-

Haan and JJMT, Inc., appeal by leave granted the permanent injunction entered by the circuit court. We vacate the injunction, concluding that it violates the Employee Retirement Income Security Act (ERISA), 29 USC 1001 *et seq.*, and remand to the circuit court for proceedings consistent with this opinion.

This case arose out of an embezzlement scheme by fourth-party defendant DeHaan. He was employed as the purchasing manager for fourth-party plaintiff H.S. Die & Engineering, Inc. (HSD), and ordered supplies and materials for HSD from various vendors, including plaintiff Selflube, Inc. DeHaan placed orders in the name of JJMT, Inc., a corporation of which he was the owner and president, and had the products shipped to HSD. It was alleged that DeHaan then had Action Industrial Supply Company provide packing slips [and invoices], but no actual goods, to HSD at a greatly inflated price. HSD paid the Action Industrial invoices at the marked-up price, Action Industrial kept a percentage of the payment and forwarded the remainder to JJMT. DeHaan then paid Selflube and the other vendors at the lower price through JJMT, thereby retaining substantial profits. One of De-Haan's accomplices pleaded guilty in federal court and identified DeHaan as the organizer of the scheme.

Selflube filed suit against DeHaan and JJMT. Other cross-claims and counterclaims involving the other named parties followed. DeHaan applied for a distribution from his 401(k) retirement plan. HSD, being the plan administrator, became aware of DeHaan's application and thereafter filed the fourth-party complaint against DeHaan and JJMT that is relevant to this appeal, alleging common-law counts of fraud, civil conspiracy, tortious interference with advantageous busi-

ness relationships or expectancies, and statutory conversion. A temporary restraining order was entered.

DeHaan ultimately failed to defend against HSD's complaint, and HSD requested a default judgment. A default was entered with regard to the relevant cross-complaint against JJMT and DeHaan. Before the default was entered, however, DeHaan challenged the preliminary injunction and moved to set it aside, arguing that HSD had no legal right to an injunction against his 401(k) account because the funds were regulated by ERISA and were protected by ERISA's antialienation provision, 29 USC 1056(d)(1).[1] DeHaan argued that pension funds are protected even when the plan participant has committed malfeasance, relying on *Guidry v Sheet Metal Workers Nat'l Pension Fund*, 493 US 365; 110 S Ct 680; 107 L Ed 2d 782 (1990) (*Guidry I*).

HSD argued in response to DeHaan's motion that the preliminary injunction did not violate ERISA's antialienation provision, relying on *State Treasurer v Abbott*, 468 Mich 143; 660 NW2d 714 (2003). Ultimately, the circuit court entered an order granting HSD a permanent injunction, which provided:

> 1. This Court's November 24, 2004, Preliminary Injunction is replaced by this Permanent Injunction;
>
> 2. James A. DeHaan is prohibited from transferring, disposing of, encumbering, taking a distribution of, or liquidating DeHaan's interest in H.S. Die and Engineering's Employees 401(k) Salary Savings Plan ("the Plan") without 30 days prior written notice to H.S. Die;
>
> 3. If DeHaan requests any transfer, disposition, distribution or liquidation of any of his interest in the Plan, including but not limited to a direct rollover to an indi-

---

[1] "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 USC 1056(d)(1).

vidual retirement account, he shall require the Plan Administrator to transfer all distributed funds to a financial institution and an account selected by H.S. Die;

4. Following the transfer of any funds from the Plan, DeHaan is prohibited from transferring, disposing of, encumbering, taking a distribution of, or liquidating DeHaan's interest in the account selected by H.S. Die;

5. All those in active concert or participation with DeHaan are prohibited from assisting DeHaan from concealing, transferring, disposing of, encumbering, or liquidating DeHaan's interest in the Plan, except in accordance with this Order;

6. The financial institution that receives the funds distributed from the Plan is required to prohibit the withdrawal, transfer, disposition, liquidation or encumbrance of any of DeHaan's funds, money or assets from the accounts until further Order of this Court; and

7. DeHaan will provide the financial institution that receives these funds with a copy of this Order.

This appeal ensued.

I

DeHaan asserts that the circuit court's injunction impermissibly interferes with his rights as a plan participant under ERISA. He offers several arguments in support of this position.

A

DeHaan argues that the circuit court lacked jurisdiction to issue the permanent injunction and that HSD lacks standing to bring this action. We disagree.

"Whether a court has subject-matter jurisdiction is a question of law subject to review de novo." *Cherry Growers, Inc v Agricultural Marketing & Bargaining*

*Bd*, 240 Mich App 153, 160; 610 NW2d 613 (2000). DeHaan's jurisdictional argument relies on 29 USC 1132(e)(1), which provides:

> Except for actions under subsection (a)(1)(B) of this section,[2] the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1)[3] [29 USC 1021(f)(1)] of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B)[4] and (7)[5] of subsection (a) of this section.

DeHaan argues that HSD's claims do not fall under either of the excepted subsections providing for concurrent jurisdiction [1132(a)(1)(B) and (a)(7)] and, therefore, federal district courts have exclusive jurisdiction. The statute's plain language, however, states that it only applies to actions brought "under this subchapter . . . ." 29 USC 1132(e)(1). DeHaan does not argue that HSD's action was brought under ERISA, and it clearly was not. HSD's cause of action is a state-common-law-based claim for fraud, civil conspiracy, tortious interference with advantageous business relationships or expectancies, and statutory conversion. HSD's claim for injunctive relief is also based on state law and was not brought under ERISA. DeHaan's claim that the circuit court lacked jurisdiction is therefore without merit.

---

[2] Covering civil actions brought by a participant or beneficiary to recover benefits, or to enforce or clarify his or her rights under the terms of the plan.

[3] Such persons include employers, administrators of multiemployer defined benefit plans, labor organizations, and the Pension Benefit Guaranty Corporation.

[4] See note 3.

[5] Providing that a civil action may be brought by a state to enforce compliance with a qualified medical child support order.

B

DeHaan's argument that HSD lacks standing is similarly without merit. DeHaan argues that HSD, as an employer, lacks standing under 29 USC 1132(e)(1). However, the standing provisions pertain only to civil actions brought "under this subchapter . . . ." 29 USC 1132(e)(1). The instant action is not such a civil action.

C

Next, DeHaan argues that ERISA preempts any state-law basis for HSD's claim, and that his rights are protected by ERISA's antialienation provision, § 1056(d)(1). We agree that to the extent that the injunction conflicts with ERISA, it is preempted.

1

A determination of preemption involves statutory interpretation and is reviewed de novo. *Nelson v Assoc Financial Services Co of Indiana, Inc*, 253 Mich App 580, 587; 659 NW2d 635 (2002). Federal preemption originates in the Supremacy Clause, US Const, art VI, cl 2, which states that the law of the United States "shall be the supreme Law of the Land." *Ryan v Brunswick Corp*, 454 Mich 20, 27; 557 NW2d 541 (1997), overruled in part on other grounds *Sprietsma v Mercury Marine*, 537 US 51 (2002). Consideration of issues arising under the Supremacy Clause starts with the assumption that a state's historic police powers are not superseded unless that is the clear and manifest purpose of Congress. *Allen-Bradley Local No 1111, United Electrical, Radio & Machine Workers of America v Wisconsin Employment Relations Bd*, 315 US 740, 749; 62 S Ct 820; 86 L Ed 1154 (1942). Congress's purpose is therefore " ' "the ultimate touchstone" ' " of a preemption

analysis. *Cipollone v Liggett Group, Inc*, 505 US 504, 516; 112 S Ct 2608; 120 L Ed 2d 407 (1992) (citations omitted). "The basic thrust of the [ERISA] preemption clause is to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Yerkovich v AAA*, 231 Mich App 54, 67; 585 NW2d 318 (1998), rev'd on other grounds 461 Mich 732 (2000).

ERISA's "preemption clause" provides, in relevant part:

> Except as provided in subsection (b) of this section,[6] the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. [29 USC 1144(a).]

State laws that "relate to" qualifying employee benefit plans are superseded by ERISA. 29 USC 1144(a); *Yerkovich*, 231 Mich App at 67. A law "relates to" a plan when it has a connection with or reference to such a plan. *Guidry v Sheet Metal Workers Nat'l Pension Fund*, 39 F3d 1078, 1083 (CA 10, 1994) (*Guidry III*). "[A] preëmptive relationship to an ERISA plan is established when state law interferes with a plan by: 1) altering the level of benefits which would be paid out under a given plan from state to state, 2) altering the terms of a plan, such as the requirements for eligibility, or 3) subjecting the fiduciaries of a plan to claims other than those provided for in the ERISA itself." *Teper v Park West Galleries, Inc*, 431 Mich 202, 214; 427 NW2d 535 (1988). Preemption turns on "whether state law places any

---

[6] The parties implicitly agree that the exceptions in subsection 1144(b) do not apply here.

fiscal, administrative, or legal burdens upon the plan." *Id.* at 218.

Neither Michigan's laws concerning the enforcement of judgments nor its laws concerning injunctive relief attempt to regulate ERISA plans. DeHaan argues, however, and we agree, that the permanent injunction impermissibly interferes with DeHaan's federally protected rights as a plan participant by placing restrictions on his ability to withdraw or transfer funds from his 401(k) account, in violation of ERISA's antialienation provision, § 1056(d)(1), and in contravention of the plan's terms.

"Whether the trial court's order effectuates an alienation or assignment of pension funds under 29 USC 1056(d)(1) is a question of law" that we review de novo. *Abbott*, 468 Mich at 148. Questions regarding statutory interpretation and application are issues of law determined de novo on appeal. *Yaldo v North Pointe Ins Co*, 457 Mich 341, 344; 578 NW2d 274 (1998). When interpreting a federal statutory provision, where the statute clearly addresses the issue at hand, the statute is applied as written. *Abbott*, 468 Mich at 148. Where the text is silent or ambiguous regarding the issue before the court, reference must be made to a federal agency's interpretation if it is based on a permissible construction of the statute. *Id.*, citing *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984).

2

ERISA's antialienation provision provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." Section 1056(d)(1). ERISA does not define the terms "assigned" and "alienated"; therefore, we look to the

regulations promulgated by the Secretary of Treasury, who has the authority to implement § 1056(d) of ERISA. *Chevron USA,* 467 US at 844. 26 CFR 1.401(a)-13(c)(1) defines "assignment" and "alienation" to include:

> (i) Any arrangement providing for the payment to the employer of plan benefits which otherwise would be due the participant under the plan, and

> (ii) Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary.

The protection of ERISA's antialienation provision extends to involuntary alienation and is applicable even when the participant has engaged in criminal or civil misconduct. *Guidry I,* 493 US at 376-377.

In *Guidry I,* the plaintiff was the chief executive officer of the Sheet Metal Workers International Association, Local 9, and also a trustee of the union's pension fund. *Id.* at 367. The plaintiff pleaded guilty of embezzling from the union and began serving a prison term. *Id.* at 367-378. He filed a complaint under ERISA against two other pension plans in which he was a participant, alleging wrongful refusal to pay benefits to which he was entitled. *Id.* at 368. The plans contended that the plaintiff forfeited his right to receive benefits because of his criminal misconduct. *Id.* They argued, in the alternative, that any benefits the plaintiff was entitled to receive should be paid to the union rather than to him. *Id.* The lower court rejected the plans' position that the plaintiff forfeited his right to benefits because ERISA provides that benefits are not forfeitable even upon a showing of employee misconduct. *Id.* at 369. The union intervened, seeking to have the court

" 'restrain and enjoin the Pension Funds from paying any further pension benefits' " to the plaintiff until they were made whole for their losses. *Id*. at 368 n 5. The lower court subsequently concluded that ERISA's prohibition on assignment or alienation did not preclude the imposition of a constructive trust in favor of the union because " 'where the viability of a union and the members' pension plans was damaged by the knavery of a union official, a narrow exception to ERISA's anti-alienation provision is appropriate.' " *Id*. at 370. The United States Court of Appeals for the Tenth Circuit affirmed, concluding that "ERISA's anti-alienation provision could not be invoked to protect a dishonest pension plan fiduciary whose breach of duty injured the beneficiaries of the plan." *Id*. at 370.

The Supreme Court reversed, rejecting any equitable exception to the antialienation provision, even for employee malfeasance or criminal misconduct. *Id*. at 376. The Court noted that the antialienation provision "reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them." *Id*. Any exceptions must be stated by Congress.[7] *Id*.

While the antialienation provision is subject to no exceptions, except those stated by Congress, the prevailing view is that the provision does not apply to pension funds after the funds are received by the beneficiary:

> Four of the five courts of appeals to consider the question [whether ERISA's antialienation provision is vio-

---

[7] In 1997, Congress amended ERISA by adding an exception for restitution to the plan itself for a crime or tort against the plan. 29 USC 1056(d)(4). That exception is not applicable here.

lated by a court order that applies only after pension benefits are disbursed] have construed § 1056(d)(1) [anti-alienation provision] *as applying to benefits only while held by the plan administrator and not after they reach the hands of the beneficiary. Wright v. Riveland,* 219 F.3d 905, 919-21 (9th Cir. 2000); *Robbins v. DeBuono,* 218 F.3d 197, 203 (2d Cir. 2000); *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1081-83 (10th Cir. 1994) (en banc); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville,* 16 F.3d 52, 54-56 (3d Cir. 1994). . . .

The plain language of § 1056(d)(1) is that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." That language governs only the plan itself. Standing alone, it "does not read comfortably as a prohibition against creditors reaching pension benefits once they have left the hands of the administrator." *Robbins,* 218 F.3d at 203. . . .

The regulations promulgated by the Secretary of Treasury, who has the authority to implement § 1056(d) of ERISA, further reinforce our interpretation. Those regulations, which are entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), define the terms "assignment" and "alienation" to cover:

"(i) Any arrangement providing for the payment to the employer of plan benefits which otherwise would be due the participant under the plan, and

"(ii) Any direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest *enforceable against the plan* in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary."

26 C.F.R. § 1.401(a)-13(c)(1) (emphasis added). Once benefits are distributed to the beneficiary, a creditor's rights are enforceable against the *beneficiary,* not against the *plan* itself . . . . [*Hoult v Hoult,* 373 F3d 47, 54-55 (CA 1, 2004) (some emphasis added).]

In granting the instant injunction, the circuit court relied on *Abbott,* 468 Mich at 143. In *Abbott,* the State Treasurer filed a complaint under the State Correctional Facility Reimbursement Act (SCFRA), MCL 800.401 *et seq.,* seeking to recover the costs of the defendant's prison confinement. *Abbott,* 468 Mich at 145. The treasurer sought to have the defendant's monthly pension payments deposited to his prison account rather than his credit union. *Id.* at 145, 160. The trial court granted the relief requested, but this Court reversed, holding that the order violated ERISA's antialienation provision. *Id.* at 146. This Court relied on an almost identical case brought in federal district court in which the State Treasurer sought to direct a pension plan to deposit benefits into an inmate's prison account. *Id.* at 147, citing *State Treasurer v Baugh,* 986 F Supp 1074 (ED Mich, 1997). In *Abbott,* the State Treasurer attempted to distinguish *Baugh* on the basis that there was no claim against the pension plan in *Abbott;* rather, the order was directed to the defendant. *Abbott,* 468 Mich at 147. This Court ruled, however, that the effect of the trial court's order was to require the pension fund to make payments to the defendant's prison account against his will, and that this involuntary transfer constituted an assignment that contravened the antialienation provision of ERISA. *Id.* at 147. Our Supreme Court reversed, concluding that, because the order was directed to the defendant, it did not constitute a transfer to another person, so it was not an assignment or alienation contrary to ERISA. *Id.* at 151. The Supreme Court reasoned that, because the order merely directed the defendant to receive his benefits at his own address, it did not transfer any legal title to, or interest in, the funds to another person, so it was not contrary to ERISA's antialienation provision. *Id.*

HSD argued below that *Abbott* is dispositive and permits the restraints imposed by the injunction; the circuit court agreed. DeHaan maintains that *Abbott* is distinguishable because the defendant in *Abbott* was already receiving pension benefits at his credit union account, and that *Abbott* only applies to funds already being paid to a participant.

During the pendency of this appeal, the United States Circuit Court of Appeals for the Sixth Circuit decided *DaimlerChrysler Corp v Cox*, 447 F3d 967 (CA 6, 2006). The issue presented in *DaimlerChrysler* was "whether Michigan's State Correctional Facility Reimbursement Act (SCFRA), in conjunction with other Michigan laws and with directives from the Michigan Department of Corrections (MDOC), runs afoul of the federal Employee Retirement Income Security Act (ERISA) in cases where prisoners refuse to inform their pension plans of a change of address." *Id.* at 968. The court answered in the affirmative, notwithstanding *Abbott*:

> We acknowledge that the Michigan Supreme Court addressed notices and orders under SCFRA that were similar to the notices and orders at issue here in *State Treasurer v. Abbott*, 468 Mich. 143, 660 N.W.2d 714, 719 (2003), and that the Michigan Supreme Court reached the opposite conclusion. The Court held that because money had not been transferred from the pension plan at issue to "another person" instead of to the prisoner, no alienation had occurred. Because the prisoners had received their benefit payments at their own institutional addresses, and because these benefits were not attached until they were paid to the prisoners, the Michigan Supreme Court held that there was no alienation. *Id.*
>
> We find the *Abbott* opinion unpersuasive. Contrary to the reasoning of the Michigan Supreme Court, the fact that the prisoners have received their benefit payments at their "own" addresses is *irrelevant to the question of alienation because (1) the prisoners did not want to receive the pay-*

*ments at their institutional addresses,* (2) Michigan law strictly controls a prisoner's bank account and how the funds may be used, and (3) the state already effectively owned 90% of the payments even before they were received. The fact that the payments were sent to the prisoner's institutional address is therefore a mere formalism that is not dispositive of whether an alienation has occurred in the present case.

*Although we hold that SCFRA as applied in this case is preempted by ERISA,* we are not rendering the state incapable of seeking reimbursement using a prisoner's pension benefits. Once the benefit payments are received, even if the prisoner tries to conceal them in an illegal account, *the state can take action against the prisoner by placing a constructive trust on those already-paid funds. See Guidry II,*[8] *39 F.3d at 1082-83. The state must, however, wait for the Pension Plan to send the benefit payments at the direction of the prisoner before the state encumbers those payments. To do otherwise would violate both the letter and the spirit of ERISA's anti-alienation provision (which, at a minimum, prohibits the attachment of a debtor's pension plan benefits while still controlled by the pension plan) and the terms of the Pension Plan forbidding the benefits from devolving upon others. . . .*

Because we hold that SCFRA orders and notices are preempted by ERISA's anti-alienation provision, we need not address whether the orders and notices are also preempted by ERISA's general preemption provision. That question can wait for another day when it may prove dispositive in a case then before the court. [*Id.* at 975-976 (emphasis added).]

3

ERISA additionally provides that a plan must be administered as written. 29 USC 1104(a)(1)(D) states:

(a) Prudent man standard of care

---

[8] The various decisions in *Guidry* refer to this opinion as *Guidry III.*

(1) [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

* * *

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

The instant plan provides that a participant is entitled to elect a direct rollover of funds into an individual retirement account (IRA):

[A] Distributee may elect, at *the time and in the manner prescribed by the Plan Administrator*, to have a portion of the Eligible Rollover Distribution paid directly to an Eligible Retirement Plan specified by the *Distributee* in a Direct Rollover. [Emphasis added.]

4

We conclude that certain provisions of the permanent injunction entered in this case are impermissible under ERISA.

a

DeHaan first challenges the requirement that he provide HSD with 30 days written notice before transferring, disposing of, encumbering, taking a distribution of, or liquidating his interest in the ERISA plan. We agree with DeHaan that the court cannot impose conditions on DeHaan's exercise of his rights under the plan. The plan's provisions regarding notice must control.

b

DeHaan also challenges the provision that requires him to direct the plan administrator to transfer any

direct-rollover IRA distributions to a financial institution and account selected by HSD.[9] HSD argues that *Abbott* permits such a restraint. We conclude that this provision violates DeHaan's rights under ERISA. To be sure, *Abbott* includes language indicating that a court may order a plan participant to direct that plan proceeds be paid into a particular account, as long as that account is in the participant's name, because doing so does not create a right or interest in a third party enforceable against the plan. *Abbott,* 468 Mich at 151. However, *Abbott* is distinguishable.[10] In *Abbott,* the prisoner was already receiving pension payments payable to himself, and the order simply required him to receive those payments at his current (prison) addresses. Here, the challenged provision of the order grants HSD the right to select the financial institution and account into which DeHaan's ERISA benefits will be rolled over, which clearly involves more than a change of address.[11] Also of considerable importance is that HSD has made clear that the purpose of the provision is to allow HSD to intercept the payments midstream, before they are received into the IRA.[12] This

---

[9] While DeHaan agreed that HSD could select the account into which he received any distributions "to himself," he at all times objected to HSD's exercising control over any direct-rollover IRA distributions.

[10] *DaimlerChrysler, supra,* decided after *Abbott,* indicates that a court cannot order the involuntary direction of ERISA benefits into an account selected by a third party, and that such an order effects an indirect arrangement whereby the third party acquires from the participant a right enforceable against the plan in, or to, all or any part of a plan benefit payment that is, or may become, payable to the participant.

[11] It is not even clear from the order whether the account will be in DeHaan's name, or who will choose the IRA trustee.

[12] HSD asserts that the moment DeHaan's funds leave the plan, e.g., for split seconds during electronic transfer to an IRA, the court and, through its order, HSD, can assert control over the funds. Although HSD argues that the funds would be outside ERISA's protections after the

is far different from the circumstances in *Abbott*, where the payments were made into the prisoner's account, and the warden then asserted rights under the SCFRA. The *Abbott* Court found this distinction relevant:

> The dissent asserts that the warden obtains a property interest in the funds before depositing them in defendant's prison account. The trial court's order, however, *compels* the warden to deposit the funds in defendant's prison account, thus ensuring that defendant receives the funds before they are distributed under the SCFRA. The warden essentially acts as a bank teller—he *must* deposit the funds in defendant's account upon receipt. Thus, the warden does not obtain any interest in, or title to, the pension funds before depositing them in defendant's account and has no discretion or right to use the funds. [*Abbott,* 468 Mich at 151 n 9 (emphasis in original).]

In contrast to the arrangement in *Abbott*, HSD proposes to intercept the rollover payment before it reaches the IRA.

Further, this provision of the order is in direct conflict with the plan's terms, which clearly state that the distributee may elect, in the manner prescribed by the plan administrator, to have a portion of the eligible rollover distribution paid directly to an eligible retirement plan, specified by the *distributee*, in a direct rollover. Thus, the plan itself provides that the distributee shall specify the eligible retirement plan into which the funds will be paid, and provides as well that the funds will be paid directly to the plan. Contrary to HSD's argument, the court cannot take control of the

funds leave the plan and before they are deposited into an IRA, it has failed to explain how it would be entitled to capture those funds, midtransaction, and redirect them to itself when the payee of the transfer is the IRA plan or trustee. A direct rollover is effectuated by a direct payment to either an IRA plan or IRA trustee. Treasury Regulation 1.401(a)(31)-1.

funds the moment they leave the plan, and while they are en route to the IRA, because to do so would deprive DeHaan of other rights under the plan—the right to elect a direct rollover to an eligible plan of his choice. Thus, ¶ 3 of the injunction cannot stand.

II

DeHaan also challenges the restrictions placed on his access to a rollover IRA. Once the funds are in an IRA, they are no longer protected by ERISA. See *In re Houck,* 181 BR 187, 191-192 (Bankr ED Pa, 1995) ("IRAs are tax qualified . . . but they are not subject to ERISA and are specifically excepted from ERISA's anti-alienation requirement," citing 29 USC 1051[6] and 29 CFR 2510.3-2[d]).[13] DeHaan maintains, however, that once deposited in an IRA, the funds

---

[13] 29 CFR 2510.3-2 provides, in pertinent part:

(a) General. This section clarifies the limits of the defined terms "employee pension benefit plan" and "pension plan" for purposes of title I of the Act and this chapter by identifying certain specific plans, funds and programs which do not constitute employee pension benefit plans for those purposes . . . .

\* \* \*

(d) Individual Retirement Accounts. (1) For purposes of title I of the Act and this chapter, the terms "employee pension benefit plan" and "pension plan" shall not include an individual retirement account described in section 408(a) of the Code [Internal Revenue Code of 1954], an individual retirement annuity described in section 408(b) . . . and an individual retirement bond described in section 409 of the Code, provided that—

(i) No contributions are made by the employer or employee association;

(ii) Participation is completely voluntary for employees or members;

are protected under state law exempting IRAs from execution, MCL 600.6023(1)(k).[14] The circuit court's analysis focused on the extent to which it could limit DeHaan's ability to transfer the funds under ERISA. The court did not address DeHaan's rights under MCL 600.6023(1)(k), or the extent to which HSD could reach the funds after they are in an IRA. Although DeHaan referred to the statute in the argument on the motion to settle the form of the order, the parties agreed that the issue was not discussed in the briefs and was not before the court. The matter should be addressed to the circuit court on remand.

We vacate the injunction and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

---

(iii) The sole involvement of the employer or employee organization is without endorsement to permit the sponsor to publicize the program to employees or members, to collect contributions through payroll deductions or dues checkoffs and to remit them to the sponsor; and

(iv) The employer or employee organization receives no consideration in the form of cash or otherwise, other than reasonable compensation for services actually rendered in connection with payroll deductions or dues checkoffs.

[14] MCL 600.6023 provides, in pertinent part:

(1) The following property of the debtor and the debtor's dependents shall be exempt from levy and sale under any execution:

* * *

(k) An individual retirement account or individual retirement annuity as defined in section 408 or 408a of the internal revenue code of 1986 and the payments or distributions from such an account or annuity.