*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ESTATE OF JENNIFER L. FOWLER.

SHELLIE SPACIL, Personal Representative of the
ESTATE OF JENNIFER L. FOWLER,

         Appellee,

v

JULIE BROOKS, Personal Representative of the
ESTATE OF HELEN FOWLER,

         Appellant.

FOR PUBLICATION
July 18, 2024
9:20 a.m.

No. 365600
St. Clair Probate Court
LC No. 19-000085-DE

*In re* JENNIFER L. FOWLER TRUST.

SHELLIE SPACIL, Trustee for the JENNIFER L.
FOWLER TRUST,

         Appellant,

v

JULIE BROOKS, Personal Representative of the
ESTATE OF HELEN FOWLER,

         Appellee.

No. 365603
St. Clair Probate Court
LC No. 22-000259-CZ

*In re* JENNIFER L. FOWLER TRUST.

SHELLIE SPACIL, Trustee for the JENNIFER L.
FOWLER TRUST,

                        Appellee,

v                                                              No.  365610
                                                              St. Clair Probate Court
JULIE BROOKS, Personal Representative of the                  LC No.  22-000259-CZ
ESTATE OF HELEN FOWLER,

                        Appellant.

_____

Before:  JANSEN, P.J., and REDFORD and D. H. SAWYER*, JJ.

PER CURIAM.

After the Estate of Helen Fowler ("Helen's estate") recovered a judgment in a wrongful-death action against the Estate of Jennifer L. Fowler ("Jennifer's estate"), Helen's estate filed a claim in probate court against Jennifer's estate in LC No. 19-000085-DE, seeking recovery of the judgment.  In LC No. 22-000259-CZ, the Jennifer L. Fowler Trust ("Jennifer's trust") filed a petition for a declaratory judgment regarding whether assets in Jennifer's trust could be used to pay the claim of Helen's estate.  Following an evidentiary hearing, the probate court ruled that life insurance proceeds received by Jennifer's trust could be used to satisfy the claim of Helen's estate, but that proceeds from a 401(k) account owned by Jennifer could not be used to satisfy that claim.  In Docket Nos. 365600 and 365610, Helen's estate appeals as of right the portion of the probate court's order disallowing recovery of the 401(k) proceeds.  In Docket No. 365603, Jennifer's trust appeals as of right the portion of the probate court's order allowing recovery of the life insurance proceeds.[1]  We affirm the portion of the probate court's order allowing the life insurance proceeds to be used to satisfy the claim of Helen's estate, and reverse the portion of the probate court's order disallowing recovery of the 401(k) account proceeds.

Jennifer Fowler was the daughter of Helen Fowler.  The background facts that led to the judgment by Helen's estate against Jennifer's estate are summarized in this Court's prior opinion in *Brooks v Spacil*, unpublished per curiam opinion of the Court of Appeals, issued January 25, 2024 (Docket No. 361353), pp 1-2, as follows:

> In 2018, Jennifer Fowler assumed the role of patient advocate for her 79-year-old mother, Helen Fowler, who had been diagnosed with dementia and resided at an assisted living facility.  On November 10, 2018, Jennifer took Helen from the facility to Jennifer's home, where Jennifer fatally shot both Helen and herself.  Another daughter, Julie Brooks, as personal representative of Helen's estate ("plaintiff"), brought this wrongful-death action against Jennifer's estate

_____

[1] These appeals were consolidated by order of this Court.  *In re Fowler Estate; In re Jennifer L Fowler Trust*, unpublished order of the Court of Appeals, entered April 11, 2023 (Docket Nos. 365600; 365603; 365610).

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

("defendant"). A jury awarded plaintiff damages of $557,105 for loss of society and companionship. The trial court entered a final judgment for plaintiff of $623,606.24, which included costs, interest, and case evaluation sanctions. . . .

Helen and her late husband had four children: Julie Brooks, Thomas Fowler, Jane Korth, and Jennifer Fowler. After Helen's husband passed away in 2009, Helen's mental condition began to decline. The children agreed that sometime before 2018, Helen was no longer able to handle her financial and medical affairs. Julie was previously designated as Helen's attorney-in-fact and patient advocate. In 2018, it became apparent that Helen could no longer live on her own and she was moved to Mercy Village, an assisted living facility. Later in 2018, Mercy Village advised Julie that Helen needed to be moved to another facility where she could receive more appropriate assistance. Helen was diagnosed with dementia and there were negative changes in her behavior. In mid-2018, Julie was no longer able to serve as her mother's patient advocate because of other family commitments. Jennifer assumed that role. In September 2018, Helen was hospitalized for a urinary tract infection and the medical staff adjusted her medications to better control her moods and behavior. In September, Helen was released from the hospital and moved to a new facility, Lakeshore Woods.

On November 10, 2018, Jennifer picked up Helen from Lakeshore Woods and took her to Jennifer's home. In a telephone call with Jane's boyfriend, Douglas Dalton, Jennifer stated that she was going to take control of matters and could not see her mother continue on "like this anymore." Dalton tried to assure Jennifer that everything would be fine, but contacted the police and went over to Jennifer's house. After Dalton and the police arrived, they discovered Helen and Jennifer in a bed with fatal gunshot wounds.[2]

In May 2019, Helen's estate filed a claim against Jennifer's estate for the value of a wrongful-death claim, which was estimated to be approximately $1 million. After Helen's estate was awarded a judgment of $623,606.24 against Jennifer's estate, Jennifer's trust filed a declaratory-judgment action to determine what assets of the trust could be used to satisfy the judgment.

Jennifer was the named insured under a life insurance policy provided by her employer and issued by Metropolitan Life Insurance Company, which named Jennifer's trust as the beneficiary. After Jennifer's death, Metropolitan Life paid a claim on that policy and disbursed $438,385.20 to Jennifer's trust.

Jennifer also participated in her employer's 401(k) retirement plan, known as the DTE Electric Company Savings & Stock Ownership Plan for Employees Represented by Local 223 of

---

[2] This Court in its previous opinion affirmed the final judgment entered in favor of Helen's estate from the wrongful-death action. *Brooks*, unpub op at 1, 10.

the Utility Workers Union of America ("Savings & Stock Plan"). The terms of the Savings & Stock Plan provide, in relevant part:

> (5) **Death of Beneficiary**. If a Beneficiary who is entitled to receive payments from the Trust Fund dies before receiving all payments due, any remaining benefit shall be paid to the Beneficiary's estate in a lump sum.

Jennifer's trust was named as the beneficiary of the Savings & Stock Plan.

Jennifer's trust took the position that both the life insurance proceeds and the 401(k) plan funds were exempt from creditors' claims, whereas Helen's estate argued that both assets were available to satisfy the judgment debt owed by Jennifer's estate. After conducting an evidentiary hearing, the probate court ruled that the 401(k) account funds were exempt under MCL 700.7605(2), but that the life insurance proceeds could be used to satisfy the judgment claim by Helen's estate. These appeals followed.

## I. THE 401(K) ACCOUNT

In Docket Nos. 365600 and 365610, Helen's estate argues that the probate court erred by ruling that Jennifer's 401(k) account funds were exempt from attachment by Helen's estate under MCL 700.7605(2). We agree.

This Court reviews de novo the proper interpretation of a statute. *In re Reisman Estate*, 266 Mich App 522, 526; 702 NW2d 658 (2005). This Court also "reviews de novo the language used in wills and trusts as a question of law." *Id.* In a declaratory-judgment action, this Court reviews questions of law de novo, but the lower court's decision whether to grant or deny a declaratory judgment is subject to the trial court's discretion. *T & V Assoc, Inc v Dir of Health & Human Servs*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 361727); slip op at 8; lv pending. A lower court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Id*.

Resolution of this issue turns on the probate court's interpretation and application of MCL 700.7605. As explained in *Hopkins v Duncan Twp*, 294 Mich App 401, 410; 812 NW2d 27 (2011):

> The goal in interpreting a statute is to ascertain the Legislature's intent. The first step in doing so is looking to the language used. Effect must be given to each word, reading provisions as a whole, and in the context of the entire statute. If the language is clear and unambiguous, the statute must be applied as written. In such instances, judicial construction is neither necessary nor permitted. [Citations omitted.]

MCL 700.7605 addresses when trust property may be accessed to pay a creditor's claim against a settlor's estate. The statute provides, in relevant part:

> (1) The property of a trust over which the settlor has the right without regard to the settlor's mental capacity, at his or her death, either alone or in conjunction with another person, to revoke the trust and revest principal in himself or herself is subject to all of the following, but only to the extent that the settlor's property

-4-

subject to probate administration is insufficient to satisfy the following expenses, claims, and allowances:

(a) The administration expenses of the settlor's estate.

(b) An enforceable and timely presented claim of a creditor of the settlor, including a claim for the settlor's funeral and burial expenses.

(c) Homestead, family, and exempt property allowances.

(2) A trust established as part of, and all payments from, an employee annuity described in section 403 of the internal revenue code, 26 USC 403, an individual retirement account described in section 408 of the internal revenue code, 26 USC 408, a Keogh, or HR-10, plan, or a retirement or other plan that is qualified under section 401 of the internal revenue code, 26 USC 401, shall not be considered to be a trust described in subsection (1).

The probate court ruled that Jennifer's 401(k) account funds were not available to pay her creditors because the funds are part of a plan complying with the Employee Retirement Income Security Act of 1974 (ERISA), 29 USC 1001 *et seq.* There is no dispute that the Savings & Stock Plan is a qualified 401(k) account that was intended to provide Jennifer with retirement income during her lifetime. However, the Savings & Stock Plan provides that, after Jennifer's death, any remaining funds are to be paid to the fund beneficiary's estate in a lump sum if there is no surviving beneficiary. Therefore, under the Savings & Stock Plan, any 401(k) account funds remaining after Jennifer's death converted to a lump-sum cash payment. This asset no longer involved a retirement account administered by DTE. Upon the lump-sum conversion, the funds were no longer part of the Savings & Stock Plan subject to federal regulations for retirement accounts. For this reason, the probate court erred by ruling that MCL 700.7605(2) applied to prohibit Helen's estate from reaching the lump-sum payment of the remaining 401(k) account funds.

State laws that relate to qualified employee benefit plans are superseded by ERISA. *Selflube, Inc v JJMT, Inc*, 278 Mich App 298, 305; 750 NW2d 245 (2008). ERISA provides that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 USC 1056(d)(1). ERISA's antialienation provision only obligates protecting benefits up to the point of payment. Once a pension plan has sent payments to the beneficiary, relinquishing control over the payments, attachment of those funds by a creditor does not involve alienation of the benefits. *DaimlerChrysler Corp v Cox*, 447 F3d 967, 974 (CA 6, 2006).[3] A different result occurs if funds are diverted before they are paid out. *Id*. at 974-975.

Although ERISA protects funds held by a retirement account, that protection is lost once the beneficiary receives the funds. In *State Treasurer v Abbott*, 468 Mich 143, 149, 153-159; 660 NW2d 714 (2003), the Court concluded that ERISA did not prevent the state treasurer from accessing funds protected by ERISA after the funds were deposited from a pension plan into a

---

[3] Caselaw from other jurisdictions is not binding on this Court, but may be considered for its persuasive value. *Sarkar v Doe*, 318 Mich App 156, 190 n 18; 897 NW2d 297 (2016).

prisoner's account because ERISA does not protect pension funds after the beneficiary receives them. While *Abbott* involves a prisoner account, the rationale of *Abbott* applies equally to this case. After Jennifer's death, the funds from the Savings & Stock Plan no longer are to be used to fund retirement benefits, but are payable in a lump sum. Jennifer named her trust the beneficiary of those funds instead of naming any individual beneficiary. ERISA is intended to protect retirement assets, but the lump-sum payment due to Jennifer's trust can no longer be considered a retirement account.

In support of its argument, Helen's estate relies on *Commerce Bank, NA v Bolander*, 44 Kan App 2d 1; 239 P3d 83 (2007), in which a bank sought to collect on a promissory note against the settlor's estate and revocable trust. In that case, the trust property included an individual retirement account (IRA), which named the settlor's trust as beneficiary of the IRA benefits. *Id*. at 3-4. There were no other assets in the trust at the time of the settlor's death. *Id*. at 4. At issue was whether the bank could reach the IRA benefits payable to the trust. *Id*. at 3. The court explained that any exemption from attachment of IRA payments applied only during the settlor's lifetime:

> There is no question in this case that IRA benefits are statutorily "exempt from any and all claims of creditors of the beneficiary or participant." K.S.A. 60-2308(b); see *Bartlett Cooperative Ass'n v. Patton*, 239 Kan. 628, 722 P.2d 551, Syl ¶¶ 2, 3 (1986) (IRAs are precluded from garnishment under Kansas law for proceedings filed on or after July 1, 1986). The promissory note complied with K.S.A. 60–2308(b) where it limited the right of setoff by expressly excluding any IRA or Keogh accounts or any trust accounts where setoff would be prohibited by law. Commerce could not reach the IRAs during Wanda's life. The question in this case is whether Commerce can reach the IRA benefits after Wanda's death where the beneficiary of the IRA benefits is the Trust.

> Commerce argues, and the district court held, the exemptions that surround an IRA or its benefits to the settlor are personal to the settlor. We agree. The exemption is not transferable and disappears upon the death of the settlor, except for certain statutory exceptions such as the homestead rights and various real and personal property. See K.S.A. 59-401, K.S.A. 59-403. In *In re Vary Estate*, 401 Mich. 340, 350, 258 N.W.2d 11 (1977), *cert. denied* 434 U.S. 1087, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978), the court applied this rationale in the context of social security benefits:

>> "We think the same reasoning applies here. If the Congress intended to exempt benefits such as paid to Mrs. Vary from legal process even when the recipient died, it would have said so or would have used different wording. Both *Philpott* [, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973) ] and *Porter* [, 370 U.S. 159, 82 S.Ct. 1231, 8 L.Ed.2d 407 (1963) ] indicate that such benefits are for support of living people with continuing needs. Exemption is a protection that does not survive the individual. It is a personal protection which dies with the beneficiary."

Black letter law also supported the personal nature of an exemption. 31 Am.Jur.2d, Exemptions § 238 provides:

> "The right to an exemption exists solely by virtue of express constitutional or statutory provisions. Accordingly, any determination of persons or classes of persons who may claim exemptions in any particular state must be directed to that state's constitution and statutes and, unless the debtor claiming an exemption is one of the persons or classes of persons therein named, his claim cannot prevail, because a debtor's right to an exemption is a personal one which does not survive the death of the person in whose favor it exists. [Footnotes omitted]."

See also 31 Am. Jur. 2d, Exemptions § 239 (which provides that the right of exemption is limited to a natural, rather than a legal, person). [*Bolander*, 44 Kan App at 15-16.]

Thus, the court in *Bolander* treated the IRA as nonexempt property, explaining:

> The Trust argues there is no policy reason why property received by a revocable trust as a result of the death of the settlor, which is or was otherwise exempt from the claims of the settlor's creditors, suddenly become subject to the claims of the settlor's creditors. The Trust makes a comparison to payable on death accounts and joint tenancy accounts being accessible to creditors during the life of the settlor but not upon death. See *In re Estate of Harrison*, 25 Kan.App.2d 661, 669, 967 P.2d 1091 (1998) *rev. denied* 267 Kan. 885 (1999) (property held by a decedent and another in joint tenancy passes to the survivor, and the property is not part of the decedent's probate estate); *Snodgrass v. Lyndon State Bank*, 15 Kan.App.2d 546, 811 P.2d 58, *rev. denied* 249 Kan. 776 (1991) (POD account). The Trust claims that if Wanda had named specific beneficiaries of the IRA, then the IRA proceeds would automatically pass at her death to the named beneficiaries. See *Estate of Davis*, 171 Cal.App.3d 854, 217 Cal.Rptr. 734 (1985); *In re Estate of McIntosh*, 146 N.H. 474, 773 A.2d 649 (2001); compare K.S.A. 40-414 (life insurance benefits are protected for any "person or persons" having an insurance interest in the life of the insured); *In re Douglas*, 59 Bankr.836 (Bankr.D.Kan.1986). We do not challenge this specific argument by the Trust. We realize the benefit of naming specific individuals as beneficiaries of an IRA. However, that is not the estate planning devise selected by Wanda. Instead, Wanda named her revocable Trust as the beneficiary of her IRAs, and the legislature has determined that assets in a revocable trust are subject to the claims of creditors at the death of the settlor. K.S.A. 58a-505.

> The Trust argues that protecting Commerce in this situation stands the law upside down by making assets which are exempt during Wanda's lifetime available for creditors who have not exercised or attempted to exercise any rights during Wanda's lifetime, but allows assets such as joint tenancy accounts or pay on death accounts to be exempt from creditors. The Trust claims this result is inconsistent

with the United States Supreme Court's recent opinion in *Rousey v. Jacoway*, 544 U.S. 320, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005). We find the Trust's argument unpersuasive. Again, *Rousey* involved whether a Chapter 7 bankruptcy petitioner could exempt assets in a IRA from the bankruptcy estate pursuant to 11 U.S.C. § 522(d)(10)(E) (2000 ed. and Supp. II). The *Rousey* Court held that IRAs can be so exempted. 544 U.S. at 322, 125 S.Ct. 1561. However, *Rousey* provides no authority on exemption of the IRA after the settlor's death or for assets held in trust.

The Trust argues IRAs remain IRAs in payout status. While this may be true in a inter vivos situation, the result is not the same upon the death of the settlor. In fact, the federal bankruptcy code makes a distinction between an IRA beneficiary and an inherited IRA beneficiary. The court in *In Re Navarre*, 332 Bankr.24, 30-31 (Bankr.M.D.Ala.2004), stated:

> "The question becomes whether an inherited IRA is equivalent to an IRA for purposes of determining whether it is exempt from the bankrupt estate. Examination of the Internal Revenue Code would suggest that it is not because the tax code treats an inherited interest different than an IRA. See, 26 U.S.C. § 408(d)(3)(C) (which distinguishes "inherited individual retirement accounts" from "individual retirement accounts.") For this reason an "inherited individual retirement account" does not fit within the definitional scope of § 19–3–1 and therefore, it is not exempt from the bankrupt estate.
>
> The Court relies upon [*In re*] *Sims* [, 241 Bankr.467 (Bankr.N.D.Okla. 1999) ], recognizing that it is decided under an Oklahoma exemption statute. The Court in *Sims* found that an IRA is exempt from the bankrupt estate as a matter of Oklahoma law. Similarly, an IRA account owned by a debtor who files bankruptcy in Alabama is likewise exempt. The Court in *Sims* examined 26 U.S.C. § 408(d)(3)(C) and concluded that an inherited individual retirement account is different than an individual retirement account and for that reason is not exempt. This Court does not rely upon the examination of Oklahoma law undertaken by the Court in *Sims* but rather it does agree with its conclusion, which is based upon its examination of the Internal Revenue Code, that an inherited IRA is sufficiently different from an IRA so as to preclude its exemption from the bankrupt estate. See also, *In re Greenfield*, 289 B.R. 146, 150 (Bankr.S.D.Cal.2003) (inherited IRA account not exempt under California statute)."

The district court's decision in this case does not stand the law upside down under the Kansas Uniform Trust Code. The assets in the Trust are subject to the claims of Wanda's creditors pursuant to K.S.A. 58a-505. Although Wanda's IRA benefits were not available to her creditors during her lifetime, they are available

to her creditors upon her death because she placed them in a inter vivos revocable trust. [*Bolander*, 44 Kan App 2d at 17-19.]

We agree that the analysis in *Bolander* applies with equal force to the construction and application of MCL 700.7605. After Jennifer's death, the required lump-sum payment of the 401(k) account funds became an asset subject to a creditor's claim to the extent that the assets in Jennifer's estate were insufficient to satisfy her debts. Accordingly, we reverse in part the probate court's order to the extent that it holds that the 401(k) account funds could not be used to satisfy the judgment debt owed by Jennifer's estate to Helen's estate.

## II. THE LIFE INSURANCE PROCEEDS

In Docket No. 365603, Jennifer's trust argues that the probate court erred by ruling that the life insurance proceeds were subject to any claims against Helen's estate to the extent that the estate did not have sufficient assets to satisfy the claims. We disagree.

As already noted, MCL 700.7605(1) allows a creditor of a decedent's estate to reach assets held by the decedent's revocable trust when the estate contains insufficient assets to satisfy the claim. Preliminarily, we reject any suggestion by Jennifer's trust that because the life insurance proceeds did not become trust property until after Jennifer died, they are not subject to MCL 700.7605(1) in the first instance. Nothing in the language of MCL 700.7605(1) limits its scope to property that only became trust property before a settlor's death. On the contrary, the statute plainly applies to "[t]he property of a trust," which it goes on to describe as referring to a trust that was revocable during the settlor's lifetime. It is undisputed that Jennifer's trust is the type of revocable trust referred to in MCL 700.7605(1). Further, it is undisputed that Jennifer's life insurance policy named her trust as beneficiary. By virtue of that designation, the life insurance proceeds became "property of a trust," bringing them within the scope of MCL 700.7605(1).

Under the Insurance Code, however, life insurance proceeds intended to provide for a decedent's dependents may be exempt from the claims of the decedent's creditors. See MCL 500.2207(1). In this case, however, the probate court properly observed that Jennifer did not have a surviving spouse or children. Moreover, her insurance policy named her revocable trust as the beneficiary of the life insurance policy, and none of the named beneficiaries of the trust was a dependent of Jennifer. Accordingly, the probate court properly determined that MCL 500.2207(1) was not applicable. The probate court further determined that the life insurance proceeds were not exempt under MCL 500.2207(2), which provides, in relevant part:

> If a policy of insurance, or contract of annuity (whether heretofore or hereafter issued) is effected by any person on his own life or on another life in favor of a person other than himself, or (except in cases of transfer with intent to defraud creditors) if a policy of life insurance is assigned or in any way made payable to any such person, the lawful beneficiary or assignee thereof (other than the insured or the person so effecting such insurance, or his executors or administrators) shall be entitled to the proceeds and avails (including the cash value thereof) against the creditors and representatives of the insured and of the person effecting the same, (whether or not the right to change the beneficiary is reserved or permitted and whether or not the policy is made payable in the event that the beneficiary or

assignee shall predecease such person, to the person whose life is insured or the person effecting the insurance) . . . .

MCL 500.2207(2) plainly provides that the lawful beneficiary or assignee shall be entitled to the proceeds of a properly assigned insurance policy or insurance policy made payable to another.

The purpose behind MCL 500.2207(1) is to shield from creditors insurance policies procured to protect an insured's dependents. MCL 500.2207(2) extends the exemption to other policies obtained under legitimate circumstances. However, MCL 500.2207(2) plainly provides that an exemption from creditors is not available when "a policy of insurance . . . is effected by any person on his own life" and is payable to the insured. Thus, MCL 500.2207(2) does not allow an insured to obtain coverage on his or her own life and shield the policy proceeds from the insured's creditors. Jennifer obtained the insurance coverage through her employment with DTE and named her revocable trust as the beneficiary of the policy. Jennifer's trust cannot avoid the requirements of MCL 500.2207(2) by arguing that Jennifer's trust is a separate entity. As the probate court noted, MCL 500.2207(2) provides that policy proceeds paid to an insured's executors or administrators are not exempt from creditors. Given that provision, the probate court correctly held that the proceeds from Jennifer's life insurance policy, which were payable to Jennifer's trust and were to be administered by a trustee, are not protected from creditors, and therefore, can be reached by Helen's estate to satisfy the wrongful-death judgment. Jennifer could have named the individual beneficiaries of her trust as direct beneficiaries of the life insurance policy to avoid this asset from being subject to her creditors' claims, but she did not do so. See, e.g., *Ionia Co Savings Bank v McLean*, 84 Mich 625, 629-630; 48 NW 159 (1891).

The decision in *In re Estate of King*, 228 Ariz 565; 269 P3d 1189 (2012), which is cited by Jennifer's trust, does not compel a different conclusion. In that case, an insurance policy on a settlor's life named the settlor's trust as beneficiary. *Id*. at 567. The sole beneficiary of the trust was the settlor's minor son. *Id*. The court broadly applied a statute similar to MCL 500.2207(2) to protect the insurance proceeds from creditors because the settlor's minor son was a third-party beneficiary of the proceeds through the trust. *Id*. at 568.

Similar to Michigan, Arizona courts have protected life insurance proceeds when they are intended for the support of a spouse. See *ML Servicing Co, Inc v Coles*, 235 Ariz 562, 565-568; 334 P3d 745 (2014). However, creditors may reach life insurance proceeds payable to an insured's trust when there is no living beneficiary of the life insurance policy. See *In re Estate of Gottier*, 250 Ariz 104, 105-108; 475 P3d 1144 (2020).

The Arizona cases cited by Jennifer's trust simply stand for the rule that life insurance proceeds should not be available to an insured's creditors, through the insured's trust, if the insurance was intended to support the insured's dependents or other named beneficiaries, which is consistent with Michigan law. In this case, none of the beneficiaries of Jennifer's trust are her dependents, and she did not name any individual as a beneficiary of her life insurance policy. Thus, public policy does not support exempting the life insurance proceeds from Jennifer's creditors' claims. The probate court correctly held that the life insurance proceeds were available to satisfy the judgment owed to Helen's estate.

Jennifer's trust further argues that the life insurance proceeds should be considered exempt from creditors' claims under MCL 700.7605(4), which provides:

> For purposes of this section, property held or received by a trust to the extent that the property would not have been subject to a claim against the settlor's estate if it had been paid directly to a trust created under the settlor's will or other than to the settlor's estate, or property received from a trust other than a trust described in this section, shall not be considered trust property available for the payment of the administration expenses, a claim against the settlor's estate, or an allowance described in subsection (1).

Jennifer's trust contends that because the life insurance money was not an asset until after Jennifer died, designating Jennifer's trust as the beneficiary of the life insurance policy was presumably not a transfer of an asset to avoid her creditors. Jennifer's trust relies on the following commentary in Martin & Harder, *Estates and Protected Individuals Code With Reporters' Commentary*, (ICLE, February 2023 Update), p 631:

> Under the provisions of subsections (2), (3), and (4), the liability stated in subsection (1) does not apply to trusts that are a part of a qualified retirement plan and does not impair rights under a qualified domestic relations order. Additionally, assets are not to be used to pay the items described in subsection (1) if those assets would not have been subject to creditors' claims if paid to a testamentary trust or to other than the probate estate. Similarly, assets received from a trust that was not revocable by the decedent/settlor are not exposed to the liability described in subsection (1).

> An example of property exempted by subsection (4) from the liabilities described in subsection (1) is property appointed to the revocable trust by the exercise of a nongeneral power of appointment. Life insurance proceeds paid directly to the trustee of the revocable trust pursuant to a beneficiary designation also may be exempted. *See* MCL 500.2207. Retirement plan benefits paid to the revocable trust or other named beneficiaries may be exempted by MCL 600.6023(1)(k) or (*l*).

Although this commentary refers to MCL 500.2207, as discussed earlier, that statute does not exempt the life insurance proceeds in this case where Jennifer's life insurance policy did not name a dependent or another individual as a beneficiary, but instead named the trust as the beneficiary. Accordingly, the probate court did not err by ruling that the life insurance proceeds could be used to satisfy the judgment obtained by Helen's estate to the extent that other assets in Jennifer's estate were insufficient to satisfy that claim.

## III. CONCLUSION

In Docket Nos. 365600 and 365610, we reverse the portion of the probate court's order holding that Helen's estate could not reach the proceeds of Jennifer's 401(k) account, and remand for further proceedings consistent with this opinion. In Docket No. 365603, we affirm the portion

of the probate court's order allowing the life insurance proceeds to be used to satisfy the claim of Helen's estate to the extent that other assets in Jennifer's estate are insufficient to satisfy that claim. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ James Robert Redford
/s/ David H. Sawyer