*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ESTATE OF BILLIE JOE MEADOWS, by
DEBORAH MEADOWS, Personal
Representative,

UNPUBLISHED
February 14, 2019

Plaintiff-Appellee,

v

No. 339987
Wayne Circuit Court
LC No. 07-705162-DO

JOAN MEADOWS, also known as JOAN
GARDNER,

Defendant-Appellant.

Before: JANSEN, P.J., and BECKERING and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] the trial court's order denying her motion seeking relief from judgment in this divorce action. We reverse the trial court's April 11, 2017 opinion and order, and remand for further proceedings consistent with this opinion.

On appeal, defendant challenges the trial court's decision to order that proceeds of Billie Joe Meadow's pension payable to defendant be placed in the trust account of the estate's counsel, asserting that the trial court's decision violated the Employee Retirement Income Security Act, (ERISA) 29 USC 1001 *et seq*. We agree.

## I. RELEVANT FACTUAL BACKGROUND

This appeal follows the trial court's action in ordering that the survivor pension benefits defendant is receiving from Billie Joe's pension be paid to the estate's counsel's trust account. This case has a contentious and protracted procedural history in the Wayne Circuit Court,

---

[1] *Estate of Billie Joe Meadows v Meadows*, unpublished order of the Court of Appeals, entered February 1, 2018 (Docket No. 339987).

ancillary proceedings took place in the Roscommon Circuit Court and the United States District Court for the Eastern District of Michigan, and the instant case has been appealed to this Court on multiple occasions. Billie Joe and defendant were married on August 21, 1993 in Flint, Michigan, and the parties were divorced on October 24, 2008. As relevant to this appeal, the judgment of divorce provided that Billie Joe would pay to defendant alimony/spousal support in the amount of $400 a month for five years and then $200 a month for an additional ten years. Pivotal to the issues on appeal are the provisions of the judgment of divorce concerning real property and the parties' pension benefits. In particular, the judgment of divorce specified arrangements for real property located at Oak Bluffs, Higgins Lake, Michigan ("the Higgins Lake property") and provided, in pertinent part, as follows:

> The Plaintiff and the Defendant agree that as of the date of this agreement, the fair market value of this property is between $330,000 and $1,000,000. The Plaintiff shall pay for all of the usual and customary expenses for this property, including, but not limited to, all insurance premiums, all taxes, all utilities, all maintenance costs, and all repair costs. This property shall be placed on the market and sold. The parties shall agree upon a listing broker and the asking price and the vacant land shall be placed on the market. The proceeds from the sale shall be used to pay off all closing costs including the realtor's fee. The remaining proceeds shall be divided between the parties with the Defendant getting 50% percent and the Plaintiff getting 50%.

After the parties' judgment of divorce was entered, defendant conveyed the Higgins Lake property to her son, Charles Martin Gardner. Billie Joe passed away on October 29, 2011. After defendant's conveyance of the Higgins Lake property to her son was adjudged to be fraudulent, a Roscommon Circuit Court jury awarded damages in favor of the estate in the amount of $265,909.23. As a result of defendant's misconduct, the trial court also held that a constructive trust was created over the pension proceeds that defendant had received from Billie Joe's pension. With regard to the parties' pensions, retirement plans and stock ownership, the judgment of divorce provided, in pertinent part:

> The Jackson Mutual Life pension fund is premarital in nature and is, therefore, awarded to the plaintiff. The parties shall retain their own[2] in any pension benefits, IRAs and profit sharing plans, deferred compensation plans, including any other 401k, defined benefit plans, other retirement funds, or stocks as their sole and separate property free from any right, title or interest of the other party.

---

[2] It appears that because of a clerical error, the appropriate wording is missing from this provision of the judgment of divorce.

On April 13, 2017, in response to the estate's motion alleging that defendant was not tendering the pension payments she received to the estate, the trial court entered the following order:

> **IT IS HEREBY ORDERED** that Carpenters' Pension Trust Fund, P.O. Box 4540, Troy, MI 48099 shall direct deposit for the benefit of Joan Meadows, all payments from the account of Billie Meadows (DOB 11-06-1925) currently being paid to Joan Meadows (DOB 5-19-47) under the 50% spousal joint and survivor option to:
>
> The Stroble Law Firm PC
>
> IOLTA Account #567526078
>
> * * *
>
> **IT IS FURTHER ORDERED**, that the Stroble Law Firm, P.C. has the authority to use said deposited funds on her behalf to pay any creditors of Joan Meadows.

After denying defendant's motion for reconsideration, the trial court entered an order with similar language on May 15, 2017 and following a hearing, the trial court entered yet another order with the same language on June 16, 2017. After defendant filed a motion seeking relief from judgment, the trial court denied this motion and defendant filed a delayed application seeking leave to appeal in this Court. This Court entered an order granting defendant's delayed application for leave to appeal on February 1, 2018. *Estate of Billie Joe Meadows v Joan Meadows*, unpublished order of the Court of Appeals, entered February 1, 2018 (Docket No. 339987).

## II. ANALYSIS

### A. SUBJECT-MATTER JURISDICTION

First, defendant argues that the trial court did not have subject-matter jurisdiction over this case. Rather, by virtue of ERISA, the United States District Court had jurisdiction over this matter. We disagree.

On March 5, 2012, the United States District Court issued its opinion and order in Case No. 11-15686 granting the Fund's motion to dismiss for lack of subject-matter jurisdiction. Noting that the estate had filed a lawsuit on December 29, 2011 seeking an injunction barring the Fund from paying pension benefits to defendant, the Court observed that the estate asserted that the United States District Court had jurisdiction arising from 28 USC § 1331 for actions concerning "pension rights and issues arising under [ERISA]." In ultimately dismissing the case, the Court cited 29 USC § 1132(a), which limits the ability to sue under ERISA to the following parties: participants, beneficiaries, fiduciaries and the Secretary of Labor. Where the estate conceded in its response brief that it was not a participant or beneficiary with respect to the pension plan at issue, and where it was clear that it was not a fiduciary or the Secretary of Labor, the United States District Court concluded that "[p]laintiff [the estate] lacks standing to bring this

civil action under ERISA." In determining that it did not have subject-matter jurisdiction over the case, the United States District Court ruled, in pertinent part:

> Plaintiff actually appears to acknowledge in its response brief, contrary to the assertions in its Complaint, that this is not an action concerning issues arising under ERISA. For Plaintiff "agrees" in its response to the Fund's motion that the Fund, in accordance with ERISA, "must pay the benefits to Joan Meadows as the last named beneficiary and according to the plan documents." As such, there is no dispute in this case as to which party, under ERISA, is entitled to the benefits at issue. In short, this is not an ERISA action. Rather, it is a claim to determine whether [defendant] waived her right to the pension benefits in the Judgment of Divorce; and if so, whether those benefits should be placed in a constructive trust once they are paid to [defendant] and then transferred to Plaintiff. Contrary to Plaintiff's misunderstanding, the Fund is not contending that ERISA preempts Plaintiff's claim for a constructive trust. However, it does not necessarily follow, as Plaintiff asserts in its response brief, that "this [federal] Court has jurisdiction to decide . . . [Plaintiff's] constructive trust claim."

After reviewing its authority to exercise jurisdiction pursuant to 28 USC §§1331, 1332 and US Const, Art III, § 2, over claims "arising under the Constitution, laws or treaties of the United States," or where there is a diversity of citizenship or the amount in controversy exceeds $75,000, the United States District Court determined that where ERISA did not provide it with jurisdiction to adjudicate the dispute, the complaint did not allege a basis for the federal court to exercise federal subject-matter jurisdiction. The estate's complaint was dismissed without prejudice.

In a written opinion and order entered April 23, 2013, in Case No. 12-13369 in the context of cross-motions for summary judgment, the United States District Court subsequently noted that after Case No. 11-15686 was dismissed for lack of subject-matter jurisdiction, the estate filed a separate action in Wayne Circuit Court on May 22, 2012. The Carpenters' Pension Trust Fund ("the Fund") removed the case to federal court alleging that the claims at issue required the federal court to interpret the terms of the applicable pension plan governed by ERISA, and that ERISA would preempt any state law claims. After the United States District Court entered a show cause order on August 29, 2012 directing the Fund to show why Case No. 12-13369 should not be remanded to the state court because of lack of subject-matter jurisdiction in the federal court, the estate eventually filed a motion for summary judgment, arguing, in pertinent part, that defendant had waived her rights to receive pension benefits in the judgment of divorce, and that a constructive trust should be imposed to require distribution of all future pension payments to the estate. The Fund also filed a motion for summary judgment, arguing that the estate's lawsuit was barred by res judicata, that the Court lacked subject-matter jurisdiction where the estate lacked standing, and that defendant's rights to the pension benefits could not be waived in the divorce judgment. Defendant also filed a motion for summary judgment echoing the same arguments as those raised by the Fund.

In ruling on the dispositive motions, the Court concluded again, "the Estate's Complaint does not raise a claim under ERISA. The Court is not being asked to apply ERISA law to decide whether the Fund is required to pay [defendant] the [pension] benefits which the Estate claims

she waived." Rather, all parties to the lawsuit agreed that the Fund was required to pay benefits in accordance with the plan documents. While Case No. 12-13369 raised the issues of whether defendant waived her rights to the pension benefits and if so, if the pension benefits could be placed in a constructive trust, the Court concluded that "[t]hese are state law issues." After determining that diversity of citizenship was lacking, the Court ultimately concluded that the estate's complaint did not allege claims arising under federal law, either as direct federal claims or state law claims preempted by federal law and remanded this case to the Wayne Circuit Court.

Returning to the present appeal, in support of her argument that the trial court lacked subject-matter jurisdiction, defendant refers to the text of 29 USC § 1132(e)(1), which provides, in pertinent part:

**(e) Jurisdiction**

(1) Except for actions under subsection (a)(1)(B) of this section, the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary, or any person referred to in section 1021(f)(1) of this title. State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under paragraphs (1)(B) and (7) of subsection (a) of this section.

Without elaborating on her argument, defendant asserts, in a perfunctory manner, that this federal statute confers exclusive jurisdiction to adjudicate this dispute on the federal court. However, a review of case law from this Court reveals that defendant's assertion that the trial court lacked jurisdiction is without merit. In *SelfLube, Inc v JJMT, Inc*, 278 Mich App 298, 302-303; 750 NW2d 245 (2008), the fourth-party defendant argued that the circuit court lacked subject-matter jurisdiction to enter a permanent injunction. Where the fourth-party defendant argued that the federal court possessed exclusive jurisdiction over the case, this Court rejected that argument, observing that the plain language of 29 USC § 1132(e)(1) limited the federal court's exclusive jurisdiction to actions "brought under this subchapter . . . ." Where the fourth-party defendant did not argue that the action in that case was initiated pursuant to ERISA, and where the Court concluded that "it clearly was not[,]" it rejected the fourth-party defendant's contention that the trial court lacked subject-matter jurisdiction. *SelfLube*, 278 Mich App at 303. The *SelfLube* Court's conclusion was buttressed by its recognition that the cause of action was "a state common-law-based claim for fraud, civil conspiracy, tortious interference with advantageous business relationships or expectancies, and statutory conversion." *Id*. Where the claims at issue were not brought pursuant to ERISA, this Court concluded that the trial court did indeed possess subject-matter jurisdiction. *Id*.

Similarly, this case was initiated in the Wayne Circuit Court as a divorce action, the trial court was authorized to enter the parties' judgment of divorce, MCL 552.6(3) and the trial court was required to distribute the assets of the marital estate as part of the parties' judgment of

divorce. See MCL 552.19;[3] *Vander Veen v Vander Veen*, 229 Mich App 108, 110; 580 NW2d 924 (1998) ("[w]hen determining property rights in a divorce, the trial court may apportion all property that has come to either party by reason of the marriage.") Specifically, MCL 552.18(1) and (2)[4] provide that the trial court has authority to determine the parties' rights relating to vested and unvested pension benefits and order the distribution of these assets as part of the marital estate. See also *Vander Veen*, 229 Mich App at 110-111 (recognizing the trial court's obligation to distribute pension benefits as part of the marital estate). Under such circumstances, where the present case was initiated as a divorce action, and the trial court properly exercised its authority to fashion a property division award in the judgment of divorce, and in particular considered the division of the parties' pension benefits, defendant's argument that the trial court lacked subject-matter jurisdiction is without merit.[5]

## B. MCR 2.612

---

[3] MCL 552.19 provides, in pertinent part:

> Upon the annulment of a marriage, a divorce from the bonds of matrimony or a judgment of separate maintenance, the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money.

[4] MCL 552.18 provides, in pertinent part:

> (1) Any rights in and to vested pension, annuity, or retirement benefits, or accumulated contributions in any pension, annuity, or retirement system, payable to or on behalf of a party on account of service credit accrued by the party during marriage shall be considered part of the marital estate subject to award by the court under this chapter.

> (2) Any rights or contingent rights in and to unvested pension, annuity, or retirement benefits payable to or on behalf of a party on account of service credit accrued by the party during marriage may be considered part of the marital estate subject to award by the court under this chapter where just and equitable.

[5] While we have rejected defendant's argument that the trial court lacked subject-matter jurisdiction on the merits, we agree with the estate's unpreserved argument that where the issue of subject-matter jurisdiction was thoroughly canvassed before and decided by the federal court, defendant is collaterally estopped from advancing the argument that the federal court possessed exclusive subject-matter jurisdiction in this Court. See, e.g., *Monat v State Farm Ins Co*, 469 Mich 679, 683-684; 677 NW2d 843 (2004) (recognizing that collateral estoppel will apply where a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, the same parties were given a full and fair opportunity to litigate the issue and there was mutuality of estoppel).

At issue in this case is whether the trial court correctly denied defendant's motion seeking relief from judgment. MCR 2.612(C)(1) provides, in pertinent part:

On motion and on just terms, the court may relieve a party or the legal representative of a party from a final judgment, order, or proceeding on the following grounds:

* * *

(d) *The judgment is void.* [Emphasis added.]

This Court will review the trial court's decision regarding a motion for relief from judgment for an abuse of discretion. *Yee v Shiawassee Co Bd of Com'rs*, 251 Mich App 379, 404; 651 NW2d 756 (2002).

On appeal, defendant contends that the trial court abused its discretion in not granting her motion seeking relief from judgment where its earlier orders directing the Fund to deposit defendant's pension proceeds into the estate's counsel's trust account were void because the trial court lacked (1) personal jurisdiction over the Fund and (2) subject-matter jurisdiction over this dispute and the trial court's orders violated the anti-alienation provision of ERISA. To the extent that defendant relies on MCR 2.612(C)(1)(d) asserting that the trial court's orders directing the payment of pension proceeds to the estate's counsel's trust account are void, where a trial court enters a judgment that is not in compliance with the applicable law, the portions of the judgment in violation of that law are indeed void. See, e.g. *Inverness Mobile Home Community, Ltd v Bedford Twp*, 263 Mich App 241, 248-250; 687 NW2d 689 (2004) (where portions of trial court's consent judgment impermissibly infringed on the legislative authority of a township board as set forth in governing portions of applicable state law, those portions of the judgment were void and set aside). Thus, the pivotal question we must analyze is whether the trial court's orders directing the payment of pension benefits complied with the applicable provisions of ERISA.

As a preliminary matter, while the estate contends that defendant is impermissibly attempting to challenge the parties' judgment of divorce and that she is precluded by the doctrine of res judicata from doing so, a close review of defendant's arguments in her brief on appeal and reply brief on appeal confirm that this assertion is incorrect. Rather than attempting to challenge the parties' judgment of divorce, defendant's arguments focus on the trial court's decision to order the Fund to disburse Billie Joe's pension benefits to the trust account of the estate's counsel. In *Adair v State*, 470 Mich 105, 121; 680 NW2d 386 (2004), the Michigan Supreme Court set forth the elements that must be met before the doctrine will apply.

The doctrine of res judicata is employed to prevent multiple suits litigating the same cause of action. The doctrine bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first. This Court has taken a broad approach to the doctrine of res judicata, holding that it bars not only claims already litigated, but also every

claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [Citations omitted.]

Additionally, contrary to the estate's assertions, the doctrine of res judicata would not apply under the facts of this case for at least two reasons. First, a second, subsequent action is not at issue here where the estate alleges that defendant should have raised the challenges at issue in this appeal in her first appeal to this Court following the entry of the parties' judgment of divorce. *Id*. Moreover, the final element is not met where any challenge to the trial court's directive that pension proceeds be disbursed to the estate's counsel's trust account could not have been raised earlier in the proceedings, particularly when this case was first appealed to this Court in 2010, given that the trial court did not issue the directive regarding the pension proceeds until an order was first entered on April 13, 2017. Therefore, the estate's contention that the doctrine of res judicata is applicable in this case is not persuasive.

## C. DID THE TRIAL COURT'S ORDER VIOLATE THE ANTI-ALIENATION PROVISION OF ERISA?

The governing provision of ERISA, 29 USC § 1056(d)(1) provides, in pertinent part, as follows:

> Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

In *State Treasurer v Abbott*, 468 Mich 143, 149; 660 NW2d 714 (2003), the Michigan Supreme Court was called on to determine whether an order requiring the defendant, incarcerated at a state prison, to receive pension benefits at his prison address alienated or assigned his pension benefits in violation of § 1056(d)(1) of ERISA. In *Abbott*, after ordering the defendant to receive his pension benefits at his prison address, the trial court directed the warden of the prison to take the funds from the defendant's account pursuant to the State Correctional Facility Reimbursement Act, MCL 800.401 *et seq*. *Abbott*, 468 Mich at 144-145. In undertaking to answer whether the trial court's order violated ERISA, the *Abbott* Court evaluated the meaning of the federal statutory terms "alienate" and "assign." *Id*. at 149. Because ERISA does not define either the term "alienate" or "assign[,]" the *Abbott* Court turned to the definition given by a federal agency. *Id*. at 149.

> The Treasury Department has defined the term "assignment" as "[a]ny direct or indirect arrangement (whether revocable or irrevocable) whereby a party acquires from a participant or beneficiary a right or interest enforceable against the plan in, or to, all or any part of a plan benefit payment which is, or may become, payable to the participant or beneficiary." 26 CFR 1.401(a)–13(c)(1). This definition plainly contemplates a transfer of the interest to another person, i.e., a person other than the beneficiary himself. Sending a pension payment to a beneficiary at his own address, and depositing it in his own account, does not assign that payment. Neither the warden nor any other third person acquires a right or interest enforceable against the plan when the pension proceeds are sent to defendant at his current address. [*Abbott*, 468 Mich at 149-150.]

In the words of the *Abbott* Court, "[a] property interest is assigned or alienated when it has been transferred *to another person*." *Id*. at 151. Pivotal to the Court's ultimate determination that the trial court's order did not violate ERISA was its observation that the trial court did not order that the defendant's pension proceeds be sent to another address, and the deposit of the pension funds at issue "did not transfer any legal title to, or interest in, the funds to another person." *Id*. Addressing the dissent's disagreement with its reasoning, the *Abbott* Court stated, in pertinent part:

> The federal statute would be violated if the court had ordered the fund to send the payments *to another person, i.e., to a person other than defendant*, and thereby granted a right or interest enforceable against the plan to that third person. Thus, if the court had ordered the pension fund to distribute the payments directly to the state of Michigan, an assignment or alienation would result. Here, however, the court ordered the funds to be sent *to defendant himself at his current address and deposited in his own account*. Because defendant thus receives the funds, no assignment or alienation occurs. [*Id*. at 152.]

The *Abbott* Court went on to hold that once the pension funds were deposited into the defendant's prison account, ERISA did not protect the funds. *Id*. at 153-154, 160.

> We also prefer the approach adopted by the overwhelming majority of federal courts. Once pension funds are deposited in an inmate's account, ERISA does not protect them. We agree with the [*Guidry v Sheet Metal Workers*, 10 F3d 700 (CA 10, 1993) mod on reh 39 F3d 1078 (CA 10, 1994) ("*Guidry II*"] court that the text of subsection 206(d)(1) does not address whether benefits that the pensioner has already received are protected. The statute's silence on this issue requires deference to the reasonable interpretation set forth in the Treasury Department regulation. [*Guidry II*; *Chevron USA Inc v Natural Resources Defense Council, Inc*, 467 US 837; 104 S Ct 2778; 81 L Ed 2d 694 (1984).] That regulation clarifies that the statute protects against the alienation or assignment of rights *against the plan itself*. Other statutory schemes, including the Social Security Act, clearly protect benefits after their receipt. Congress did not include such expansive language in ERISA.
>
> *    *    *
>
> In truth, we merely follow the prevailing federal authorities and hold that the appropriation of funds that have been received does not alienate or assign those funds. Where no alienation or assignment has occurred, the statutory prohibition does not apply. We have no occasion or need to "carve out exceptions" to a statutory prohibition that does not apply.
>
> Defendant received the pension funds when they were sent to his current address and deposited in his prison account. At that point, ERISA did not protect the funds, and the state was free to seize and distribute the funds in accordance with the procedures set forth in the SCFRA and the trial court's order in this case. [*Abbott*, 468 Mich at 157-158.]

Similarly, in *Sweebe v Sweebe*, 474 Mich 151, 152; 712 NW2d 708 (2006), the Michigan Supreme Court considered whether the preemption provision in ERISA precluded the named beneficiary on a life insurance policy from waiving the proceeds of the policy in a divorce judgment. The *Swebe* Court acknowledged that ERISA mandates that a plan administrator "distribute plan proceeds to the named beneficiary, [but that] the named beneficiary can then be found to have waived the right to retain those proceeds." *Id*. at 152. As relevant to this case, the *Sweebe* Court observed that the preemption provision in ERISA, 29 USC § 1144(a), trumped all state laws governing employee benefit plans. *Sweebe*, 474 Mich at 154. Moreover, the *Sweebe* Court confirmed the legal principle set forth by federal statute that a plan administrator is required to distribute proceeds of an insurance policy to the named beneficiary and recognized that the Michigan Supreme Court could not "undermine" the plaintiff's status as beneficiary under any circumstances. *Id*. at 154-155. However, once the proceeds of the insurance policy were paid out to the beneficiary, the *Sweebe* Court held that the issue of whether the plaintiff lawfully renounced her interest in the proceeds in the judgment of divorce could be determined "exclusively by Michigan law[.]" *Id*. at 155.

Notable to this case, the *Sweebe* Court drew parallels to *Abbott*, recognizing that while (1) a plan administrator is mandated by ERISA to pay out pension benefits to the named beneficiary, (2) a beneficiary may also waive his or her interest in the proceeds, and (3) "[o]nce the proceeds are distributed the consensual terms of a prior contractual agreement may prevent the named beneficiary from retaining those proceeds." *Id*. at 155-156. Specifically, the *Sweebe* Court noted that "a valid waiver is not preempted by ERISA and should be enforced[,]" and that this holding was in line with several federal court decisions and "consistent with numerous past decisions by [the Michigan Supreme Court] recognizing that parties have a broad freedom to contract." *Id*. at 156. Where the plaintiff in *Sweebe* signed a provision in the judgment of divorce extinguishing her rights to the decedent's insurance contract or policy, the *Sweebe* Court found that, as determined by Michigan law, the plaintiff had "clearly and unequivocally waived her right to the plan proceeds." *Id*. at 158. Accordingly, where the plan administrator had already paid out the proceeds of the insurance policy to the plaintiff, "a claim could then be filed against the named beneficiary alleging that she waived her right to retain the proceeds." *Id*. at 158-159.

In *Reed Estate v Reed*, 293 Mich App 168, 170; 810 NW2d 284 (2011), the defendant wife was served with notice of divorce proceedings by her husband and did not defend herself in the divorce action. In *Reed Estate*, the parties' divorce judgment contained language almost identical to the language at issue in the divorce judgment in this case. Specifically, the divorce judgment in *Reed Estate* provided, in pertinent part, as follows:

IT IS FURTHER ORDERED AND ADJUDGED that both the Plaintiff and the Defendant herein shall each be and they are hereby awarded their respective pension plans, [individual retirement accounts], annuities, etc., if any, free and clear from any claim by the other. [*Id*. at 171.]

After the defendant's ex-husband passed away following the divorce without updating the beneficiary for his pension benefits, the defendant wife, as the designated beneficiary, was paid $150,000 in pension benefits. *Id*. at 171. After the defendant's late husband's estate became aware of the payment of pension benefits to the defendant, it filed an action seeking to enforce

the parties' divorce judgment and recover the proceeds paid to the defendant. *Id*. After the trial court ordered the defendant to pay the retirement benefits at issue to the estate, on appeal to this Court, rejecting the defendant's contention that the key issue was one of ERISA preemption, this Court instead stated that the pivotal issue was one of waiver, and that where ERISA is silent with respect to what constitutes a valid waiver, the question will be determined by reference to state and federal law. *Id*. at 174-175, 176. The *Reed Estate* Court ultimately determined that the defendant's "consistent course of acts and conduct established a valid waiver[,]" where she did not defend her interests in the divorce action and a default judgment of divorce was entered after her failure to respond in the divorce proceedings. *Id*. at 178, 179-180, 181.

In *Guidry v Sheet Metal Workers National Pension Fund*, 493 US 365, 367; 110 S Ct 680; 107 L Ed 2d 782 (1990), the petitioner was the chief executive officer of the respondent Sheet Metal Workers International Association, Local 9 ("the Union"). While the petitioner was eligible to receive pension benefits from three union pension funds, he pleaded guilty to embezzling more than $377,000 from the Union, and went to prison. *Id*. at 367-368. After two of the unions from which funds were embezzled asserted that the petitioner had forfeited his right to benefits, the United States District Court rejected that contention, but concluded that ERISA's anti-alienation provision allowed the imposition of a constructive trust on the pension proceeds in favor of the Union. *Id*. at 369. The United States Court of Appeals for the Tenth Circuit affirmed, concluding that ERISA's anti-alienation provision should not be used to shield a corrupt pension plan fiduciary, and that equitable principles should operate to allow the imposition of a constructive trust against the pension proceeds. *Id*. at 370.

The United States Supreme Court reversed, determining that a constructive trust would be prohibited by ERISA's anti-alienation provision "unless some exception to the general statutory ban is applicable." *Id*. at 372. As relevant to this case, the United States Supreme Court rejected the theory that an equitable exception existed to the anti-alienation provision, "either for employee malfeasance or for criminal misconduct[.]" *Id*. at 376.

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.

> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended only on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a

standard reinforces our conclusion that the identification of any exception should be left to Congress.

Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension. [*Id*. at 376-377 (footnote omitted).][6]

Returning to the facts of the present appeal, the trial court in this case ordered that a constructive trust be placed over the pension proceeds that defendant had received after also ordering that defendant should pay $265,909.23 in damages to the estate as awarded by the Roscommon Circuit Court jury. Defendant does not directly challenge the trial court's decision to award a constructive trust over the pension benefits at issue, but instead focuses her argument on the trial court's violation of the anti-alienation provision of ERISA. After defendant did not turn over pension checks that she received to the estate, the trial court entered multiple orders on April 13, 2017, May 15, 2017 and June 16, 2017 ordering the Fund to directly deposit pension payments "for the benefit of Joan Meadows" in the trust account of the estate's counsel giving the estate's counsel "authority to use said deposited funds on [defendant's] behalf to pay any creditors of [defendant]." According to the trial court's reasoning from the bench during the June 16, 2017 hearing, it possessed "equitable powers" to order the deposit of defendant's pension benefits into the trust account of the estate's counsel after defendant failed to pay damages as ordered by the trial court and she "absconded with so much of [Billie Joe's] portion of the [marital estate as set forth in the divorce] judgment. The trial court also stated that it had "authority over any pension that's part of a marital estate[,]" and that it could "order the fiduciary to do what they are supposed to do."

As discussed earlier in this opinion in the context of addressing defendant's challenge to the trial court's subject-matter jurisdiction, the trial court did possess authority to order distribution of the parties' pension benefits as part of the division of the marital estate. MCL 552.18(1), (2); *Vander Veen*, 229 Mich App at 110-111. And notably, the parties' judgment of divorce clearly specified that the parties would retain their own interests in their pension benefits and that such property would remain "sole and separate property free from any right, title or interest of the other party." However, what complicates matters in this case is that the parties do not dispute that Billie Joe did not update his beneficiary designation, and defendant was listed as the designated party to receive pension benefits. Moreover, authority from the Michigan Supreme Court confirms the general proposition of law that, pursuant to ERISA, a plan administrator is required to distribute proceeds of a plan governed by ERISA to the named

---

[6] Subsequently, in *Patterson v Shumate*, 504 US 753, 760; 112 S Ct 2242; 119 L Ed 2d 519 (1992), the United States Supreme Court, recognizing its prior decision in *Guidry* to not allow an exception to the anti-alienation provision, stated, "Indeed, this Court itself vigorously has enforced ERISA's prohibition on the assignment or alienation of pension benefits, declining to recognize any implied exceptions to the broad statutory bar."

beneficiary and contrary action runs afoul of the statute. *Sweebe*, 474 Mich at 155; *Abbott*, 468 Mich at 152. Specifically, 29 USC 1104 provides, in pertinent part, as follows:

**(a) Prudent man standard of care**

(1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

\* \* \*

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

Additionally, pursuant to *Abbott*, even where the trial court's orders specify that the pension proceeds at issue are to be deposited into the trust account of the estate's counsel for defendant's benefit to pay defendant's creditors, the end result of the trial court's order was that the pension benefits were transferred to another entity, which amounts to a "transfer of the interest" in the pension benefits to a third party, aside from the beneficiary herself. *Abbott*, 468 Mich at 149. Put another way, where the impact of the trial court's order was to transfer "the legal title to, or interest in, the [pension benefits] to another entity[,]" this action clearly violates ERISA's antialienation provision. *Id*. at 151, 152. Moreover, it must be noted that the action that the trial court took in imposing a constructive trust on defendant's pension benefits, and ordering that they be paid to a third party, essentially mirrors what the respondent did in *Guidry*, by seeking to impose a constructive trust on pension benefits in favor of the Union to satisfy its judgment against the petitioner. *Guidry*, 493 US at 369. While the United States District Court and the United States Court of Appeals permitted such action, the United States Supreme Court made clear that such action was prohibited by ERISA's antialienation provision, and that an equitable exception to the statute did not exist, even where the beneficiary of the pension engaged in malfeasance. *Id*. at 376-377; see also *Patterson*, 504 US at 760 (stating that the United States Supreme Court would not recognize "implied exceptions" to ERISA's antialienation provision). Accordingly, where the trial court's orders directing that defendant's pension proceeds be paid to the estate's counsel's trust account resulted in the transfer of the legal interest in the pension proceeds to a third party, this violated ERISA's antialienation provision and the trial court's August 11, 2017 order denying defendant's motion for relief from judgment should be reversed.

In our view, the more appropriate action for the estate to have taken in this case would have been to seek to recover the pension proceeds that were paid to defendant on the basis that she waived her rights in them, as did the estate in *Reed Estate*. *Reed Estate*, 293 Mich App at 171, 176, 178. The existing record, particularly a review of the parties' judgment of divorce, reflects that defendant relinquished her interests in Billie Joe's pension benefits by agreeing to the judgment of divorce, which amounted to a clear, voluntary waiver executed in good faith. *Id*. at 176. However, the trial court did not render any factual findings with respect to defendant's waiver of her right to receive Billie Joe's pension benefits, and it would not be appropriate for this Court to render such findings in the first instance. See *W A Foote Memorial Hosp v Mich*

*Assigned Claims Plan*, 321 Mich App 159, 181; 909 NW2d 38 (2017) (recognizing that the Court of Appeals serves as an "error-correcting Court.")

However, on remand the trial court should consider whether defendant did indeed waive her rights to Billie Joe's pension benefits, and if so, enter an order directing that pension proceeds received by defendant be relinquished to the estate until the judgment against her is satisfied. MCR 7.216(A)(7).[7] As noted, once the pension proceeds have been paid out to and received by defendant, the anti-alienation provision of ERISA is not implicated. *Abbott*, 468 Mich at 153-154; *Sweebe*, 474 Mich at 155; *Reed Estate*, 293 Mich at 175-176.[8]

We reverse the trial court's April 11, 2017 opinion and order, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Jane M. Beckering
/s/ Colleen A. O'Brien

---

[7] MCR 7.216(A)(7) provides, in pertinent part, that "[t]he Court of Appeals, may at any time, in addition to its general powers, in its discretion, and on the terms it deems just: enter any judgment or order or grant further or different relief as the case may require[.]"

[8] Given our disposition of this appeal, we need not address defendant's argument that the trial court lacked personal jurisdiction over the Fund.